Argued and submitted August 5, 1998, reversed in part and remanded in part
July 7, 1999

# STATE OF OREGON,
*Respondent,*

*v.*

# DAWN RENEE TARRENCE,
*Appellant.*

## (9607-34975; CA A97637)

985 P2d 225

Peter Gartlan, Deputy Public Defender, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender.

Katharine M. Hoskinson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

---

* Deits, C. J., *vice* Riggs, P. J., resigned.

## WOLLHEIM, J.

Defendant seeks reversal of her conviction of Forgery I. ORS 165.013. We reverse the conviction of Forgery I and, on stipulation by defendant that her actions constitute Forgery II, a misdemeanor, we remand to the trial court for entry of a judgment of conviction for Forgery II.[1]

■■ Defendant concedes that in April 1995 she cashed a forged state unemployment check in the amount of $267. The sole issue on appeal is whether that constitutes Forgery I, a Class C felony under ORS 165.013. With questions of statutory construction, our task is to discern the intent of the legislature by examining the text and context of the statute. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143 (1993). If we find that the statute is capable of at least two reasonable interpretations, then we may examine the statute's legislative history. *Tee v. Albertson's, Inc.,* 148 Or App 384, 390, 939 P2d 668 (1997).

The text of ORS 165.013 provides, in part:

"(1)   A person commits the crime of forgery in the first degree if the person violates ORS 165.007[2] and the written instrument is or purports to be any of the following:

"(a)   Part of an issue of money, securities, postage or revenue stamps, or *other valuable instruments* issued by a government or governmental agency; or

"(b)   Part of an issue of stock, bonds, or other instruments representing interests or claims against any property or person; or

"(c)   A deed, will, codicil, contract or assignment; or

"(d)   A check for $750 or more, a credit card purchase slip for $750 or more, or a combination of checks and credit

---

[1] We do not enter an instruction for resentencing because the trial court ordered that defendant's felony conviction be given immediate misdemeanor treatment; thus, a conviction on the misdemeanor will not affect defendant's sentence.

[2] ORS 165.007 defines Forgery II, a Class A misdemeanor. It provides, in part:

"(1) A person commits the crime of forgery in the second degree if, with intent to injure or defraud, the person:

"(a) Falsely makes, completes or alters a written instrument; or

"(b) Utters a written instrument which the person knows to be forged."

card purchase slips that, in the aggregate, total $750 or more, or any other commercial instrument or other document that does or may evidence, create, transfer, alter, terminate or otherwise affect a legal right, interest, obligation or status; or

"(e)   A public record." (Emphasis added.)

The trial court, in accord with the state's argument, read "other valuable instruments" in ORS 165.013(1)(a) to include any state unemployment check. It did not read subsection (1)(d) to be the exclusive section concerning checks. Therefore, the trial court concluded that, while falsely uttering a nongovernment check under $750 is a misdemeanor Forgery II crime, uttering a *government* check under $750 is a felony Forgery I crime. The state argues that the stiffer penalty furthers the goal of maintaining public confidence in government-issued instruments. Defendant urges that a careful reading of subsection (1)(a) reveals that "other valuable instruments" must be part of an "issue" by a government agency and must be the kind of instrument that, like the other examples listed in (1)(a), is inherently valuable. A check, defendant argues, is not "issued" in the sense that items listed in (1)(a) and (b)—money, securities, stamps, stocks and bonds—are issued in large series. Defendant also argues that checks are not inherently valuable as contrasted to money, because checks, which are promises to pay, only represent money or value and, thus, are only worth the paper upon which they are printed until they are negotiated for that value promised.

Initially, we address the state's argument that under ORS 165.013 (1991),[3] forgery of government checks

---

[3] Under ORS 165.013(1) (1991), forgery in the first degree included instruments that were:

"(a)  Part of an issue of money, securities, postage or revenue stamps, or other valuable instruments issued by a government or governmental agency; or

"(b)  Part of an issue of stock, bonds or other instruments representing interests in claims against any property or person; or

"(c)  A deed, will, codicil, contract, assignment, commercial instrument or other document which does or may evidence, create, transfer, alter, terminate, or otherwise affect a legal right, interest, obligation or status; or

"(d)  A public record."

was considered a felony under paragraph (1)(a). Further, the state argues that the 1993 amendments, which added current subsection (1)(d), did not expressly exclude conviction for forgery of government checks under paragraph (1)(a) because the text of (1)(a) was not altered by the amendments. The state's argument only begs the question of whether subsection 1(a) *authorizes* the state to prosecute forgery of government checks.

The term "valuable instrument" is not specifically defined. The state argues that in interpreting "words of common usage," we should give them "their plain, natural, and ordinary meaning," *PGE,* 317 Or at 611, and that the ordinary meaning of a "valuable instrument" should include a check. However, the forgery statute also concerns commercial transactions where terms of art distinguish rights from obligations. Therefore, while we do not strictly apply technical definitions, our interpretation is nevertheless guided by the technical nature of the statute.

■■ We consider the context of the statute, including other provisions and previous versions of the statute, to assist in defining "valuable instruments." *State v. Webb,* 324 Or 380, 390, 927 P2d 79 (1996); *PGE,* 317 Or at 611. ORS 165.013 (1991) and the current subsection (1)(d) support defendant's position that "valuable" instruments do not include checks, because checks are referred to as "commercial" instruments. ORS 165.013(1)(c) (1991) included "commercial" instruments, but the 1993 amendments removed that term from (1)(c) and placed it in the current subsection (1)(d) to refer to checks and credit card slips. Thus, when the legislature intended to refer to checks by a more generic term, it used "commercial" instruments, not "valuable" instruments.

That does not, however, settle the dispute. The state appears to read "valuable" instruments as an even more generic term that encompasses "commercial" instruments, *i.e.,* checks. Arguably, the sentence structure places "valuable instruments" in a phrase separate from the previous series: "money, securities, postage or revenue stamps." Regardless of whether the comma preceding "or *other* valuable instruments" (emphasis added) disconnects it from the

series, the text refers to the *other* instruments specifically listed and, therefore, is not a generic category of its own. If the legislature had intended to create a different category in kind from the series, then it would have omitted any words of reference, such as "other," to the series. Thus, we color our interpretation of "valuable" instruments by the common hue of the specific examples. *See Vannatta v. Keisling,* 324 Or 514, 533, 931 P2d 770 (1997) ("because the first three items in the clause all appear to refer to conduct that interferes with the act of voting itself, rather than with the far broader concept of political campaigning, the last phrase ['other improper conduct' found in Article II, section 8, of the Oregon Constitution,] also should be read as being confined to that more narrow scope"); *Gaston v. Parsons,* 318 Or 247, 253, 864 P2d 1319 (1994) (where general terms follow enumeration of a particular class of items, the general words are construed as applicable to things of the same nature as the enumerated class).

■■  Defendant argues that because money, securities, and postage and revenue stamps do, indeed, have an inherent pecuniary value and because the legislature included "other *valuable* instruments," the legislature intended to include in ORS 165.013(1)(a) only instruments that are inherently valuable, unlike checks. The plausibility of that reading is enhanced by defendant's argument that money and other *inherently* valuable instruments are typically issued in large or discrete series and that the statute requires valuable instruments to be "part of an issue." Because the legislature placed the requirement that "other valuable instruments" must be *"issued* by" a government body, it appears that the legislature intended that "other valuable instruments" must, likewise, be "part of an issue." In contrast, ORS 165.013(1)(d), which explicitly addresses checks, omits any such language. Using a term in one section and not in another section of the same statute indicates that the legislature purposefully intended the omission. *PGE,* 317 Or at 611. Here, the omission indicates that the legislature specifically chose not to require that checks be "part of an issue," and they thus are not included in ORS 165.013(1)(a). Finally, because ORS 165.013(1)(a) refers to issuances of instruments, a further inference is that it refers only to inherently valuable instruments and not checks.

Nevertheless, the state's reading of "valuable" instruments as a generic catch-all is not "wholly implausible." *State v. Harbert,* 155 Or App 137, 140, 963 P2d 710, *rev den* 327 Or 554 (1998). The state correctly points out that "issue" is not defined by the statute. Reference to the commercial transactions statute, ORS 73.0105(1), defines "issue" as "the first delivery of an instrument by the maker or drawer, whether to a holder or nonholder, for the purpose of giving rights to any person." Thus, the text of the statute and the text of a related statute make no reference to the size of an offering or issue. That being true, the related inference then follows that ORS 165.013(1)(a) does not necessarily refer to inherently valuable instruments. Finally, the state argues that because the term "valuable instruments" is set off as its own phrase, "other" could be interpreted to refer more generically to other kinds of instruments that are valuable, like a check, but are not necessarily inherently valuable.

We therefore conclude that the meaning of "other valuable instruments" is ambiguous and resort to the statute's legislative history. The Criminal Law Revision Commission's commentary on ORS 165.013 (1991) persuades us that defendant's interpretation of the statute is the correct one:

> "[Section 165.013] makes forgery more serious if the instrument is of the kind specified. Paragraphs (a) and (b) deal with instruments having an *inherent pecuniary value, constituting part of a larger issue* by a government or business entity. Paragraph (c) covers instruments that directly affect a deed, will, contract or commercial instrument transactions." Commentary to Criminal Law Revision Commission, Proposed Oregon Criminal Code, Final Draft and Report (July 1970), §§ 153, 160 (emphasis added).

We agree with the state's assertion that the legislature intended to reserve "[t]he more severe punishment * * * for those cases in which the writing is or purports to be part of an issue of money, securities or other government issued instruments" so as to maintain public confidence in government issued instruments. *Id.* However, that intent does not require the state's reading of the statute—that government checks of any amount fit under the felony forgery provision. Nor is the statute's purpose undermined by defendant's interpretation.

The legislature apparently recognized a logical and crucial difference in ensuring the reliability of inherently valuable instruments versus checks under $750, and it thereby fashioned the severity of the penalty for forgery to reflect that difference.

Because we conclude that ORS 165.013(1)(a) does not authorize conviction of forgery for government checks, and because the $267 check in question does not meet the jurisdictional amount for subsection (1)(d), we reverse the conviction of Forgery I, and, on stipulation by defendant that her actions constitute the crime of Forgery II, ORS 165.007, we remand to the trial court for entry of a judgment of conviction for Forgery II.

Conviction of Forgery I reversed; remanded for entry of conviction of Forgery II.