Argued and submitted June 29, reversed and remanded August 23, 2017

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JESUS GONZALEZ-AGUILLAR,
*Defendant-Appellant.*

Washington County Circuit Court
C150045CR; A159648

403 P3d 539

Erik Blumenthal, Deputy Public Defender, argued the cause for appellant. With him on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Robert M. Wilsey, Assistant Attorney General, argued the cause for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Garrett, Presiding Judge, and Lagesen, Judge, and Edmonds, Senior Judge.

## GARRETT, P. J.

Defendant was convicted after a bench trial of two counts of first-degree criminal possession of a forged instrument, ORS 165.022. On appeal, defendant assigns error to the trial court's denial of his motion for a judgment of acquittal (MJOA) on both counts. The issue before us is whether the forged documents that defendant possessed—a permanent-resident card and a Social Security card, both purporting to be issued by the federal government—are "valuable instruments" within the meaning of ORS 165.013(1)(a)(A). We conclude that they are not, and that the trial court consequently erred in denying the MJOA. The judgment is reversed.

The relevant facts are undisputed. A police officer stopped defendant for two traffic violations. The officer impounded the vehicle after he determined that neither defendant nor his passenger was authorized to drive. During an inventory search, the officer found two identification cards in the glove compartment. One appeared to be a Social Security card; the other appeared to be a permanent-resident card. Suspecting that the cards were inauthentic, the officer questioned defendant, who said that he bought the cards at a market in California and had been using them to obtain employment.

Defendant was charged with two counts of first-degree criminal possession of a forged instrument, ORS 165.022. Critically for this appeal, the state proceeded against defendant under the theory that he possessed written instruments that purported to be "[p]art of an issue of money, securities, postage or revenue stamps, or other valuable instruments issued by a government or governmental agency." ORS 165.013(1)(a)(A).

At the close of the state's case, defendant moved for a judgment of acquittal on both counts on the ground that neither of the documents that he possessed was a "valuable instrument" within the meaning of ORS 165.013(1)(a)(A). Defendant argued that a "valuable instrument" under subparagraph (A) must have inherent pecuniary value, a characteristic lacking in the two forged identification cards. The

trial court denied the MJOA. On appeal, defendant reprises his argument.

When a trial court's denial of a motion for a judgment of acquittal turns on a question of statutory construction, we review for legal error. *State v. Rodriguez*, 283 Or App 536, 540-41, 390 P3d 1104, *rev den*, 361 Or 543 (2017). We construe statutes by considering the text of the statute in context, the statute's legislative history to the extent that it is useful, and maxims of statutory construction when necessary to resolve any remaining uncertainty. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). If we have previously construed a statute, and that construction controls the interpretive question on appeal, we adhere to our prior construction of the statute unless we conclude that the prior construction is "plainly wrong." *See State v. Civil*, 283 Or App 395, 405-06, 388 P3d 1185 (2017) (internal quotation marks omitted).

We begin with the statute. ORS 165.022(1) provides:

"A person commits the crime of criminal possession of a forged instrument in the first degree if, knowing it to be forged and with intent to utter same, the person possesses a forged instrument of the kind and in the amount specified in ORS 165.013(1)."

Thus, the statute criminalizing possession of a forged instrument refers to the first-degree forgery statute, ORS 165.013(1), to determine the "kind" and "amount" of instruments that are covered. That statute, in turn, provides:

"A person commits the crime of forgery in the first degree if the person violates ORS 165.007:

"(a)   And the written instrument is or purports to be any of the following:

"*(A)   Part of an issue of money, securities, postage or revenue stamps, or other valuable instruments issued by a government or governmental agency*;

"(B)   Part of an issue of stock, bonds or other instruments representing interests in or claims against any property or person;

"(C)   A deed, will, codicil, contract or assignment;

"(D) A check for $1,000 or more, a credit card purchase slip for $1,000 or more, or a combination of checks and credit card purchase slips that, in the aggregate, total $1,000 or more, *or any other commercial instrument or other document that does or may evidence, create, transfer, alter, terminate or otherwise affect a legal right, interest, obligation or status*; or

"(E) A public record[.]"

ORS 165.013(1) (emphases added).

According to defendant, the state might well have charged and tried him under ORS 165.013(1)(a)(D) on the ground that his forged identification cards qualified as "document[s]" that "evidence" a "legal right, interest, obligation or status," but the state chose the wrong subparagraph. *Cf. State v. Mayorga*, 186 Or App 175, 184-85, 62 P3d 818 (2003) (holding that forged resident alien and Social Security cards qualified as "other document[s]" that "evidence" a "legal right, interest, obligation, or status" under *former* ORS 165.013(1)(d) (2001), *renumbered as* ORS 165.013(1)(a)(D) (2005)).

The state agrees that defendant's documents satisfied ORS 165.013(1)(a)(D), but asserts that the documents also satisfy subparagraph (A). The state invokes the plain meaning of the terms "valuable" and "instrument," citing dictionary definitions for the proposition that "other valuable instruments" refers broadly to "legal documents evidencing or defining legal rights, duties, or entitlements" that either have "monetary value in use or exchange" or are characterized by "usefulness, worth, or serviceability."

The overarching flaw in the state's argument is that we rejected a similarly expansive construction of ORS 165.013(1)(a)(A) in *State v. Tarrence*, 161 Or App 583, 588, 985 P2d 225 (1999).[1] In that case, the defendant argued that a forged state unemployment check in the amount of $267 was not a "valuable instrument" within the meaning of subparagraph (A), arguing that that provision applied only

---

[1] At the time *Tarrence* was decided, ORS 165.013(1)(a)(A) was codified at *former* ORS 165.013(1)(a) (1997), *renumbered as* ORS 165.013(1)(a)(A) (2005). Because the text of the provision relevant to this appeal is unchanged, we cite to the current version of the statute for the sake of simplicity.

to "inherently valuable instruments" that are "issued in large series." *Id.* at 585-86. The state advocated for a broad construction of the statute—*i.e.*, that "other valuable instruments" was a "generic catch-all" that was intended to refer to any type of valuable government instrument. *Id.* at 587-88.

Based on the legislative history, we agreed with the defendant, concluding that subparagraphs (A) and (B) were intended to "'deal with instruments having an *inherent pecuniary value*, constituting part of a larger issue by a government or business entity.'" *Id.* at 588-89 (quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 153, 160 (July 1970)) (some emphasis in *Tarrence* removed). We further reasoned that, although it was true that the legislature intended to impose a more severe punishment in cases in which a forged instrument purports to be issued by a government, that intent "did not require the state's reading of the statute—that government checks of any amount fit under the felony forgery provision." *Id.* at 589.

The state argues that *Tarrence* does not control the outcome in this case. We disagree. In *Tarrence*, we rejected a construction of "other valuable instruments" under ORS 165.013(1)(a)(A) that would render it a broad catchall encompassing any government-issued instrument that has some sort of value; instead, we concluded that the "defendant's interpretation of the statute is the correct one," *i.e.*, that "other valuable instruments" as used in subparagraph (A) refers to instruments that are "inherently valuable" and "issued in large or discrete series." *Id.* at 587-89. Although not in identical terms, the construction advocated by the state in this case is essentially equivalent to the one we rejected in *Tarrence*. The state has not provided us with a persuasive basis for departing from our reasoning in *Tarrence*, and we decline to do so. *See Civil*, 283 Or App at 406 (reasoning that a court may only reject an earlier construction of a statute if our conclusion was "plainly wrong, a rigorous standard grounded in presumptive fidelity to *stare decisis*" (internal quotation marks omitted)).

Returning to the documents at issue in this case, we conclude that neither instrument satisfies ORS 165.013

(1)(a)(A). First, to qualify under subparagraph (A), the instrument in question must have "inherent pecuniary value." Although neither *Tarrence* nor the legislative history precisely defines that phrase, its meaning is illuminated by the specific types of instruments mentioned in subparagraph (A). *See Tarrence*, 161 Or App at 588 ("[W]e color our interpretation of 'valuable' instruments by the common hue of the specific examples."). The instruments enumerated in subparagraph (A) do not merely have monetary value; rather money, stamps, and government-issued securities all generally possess, among other qualities, a readily ascertainable face value equivalent to a specified sum of money. Second, to qualify under subparagraph (A), the enumerated items must be part of an "issue" by the government; in other words—as the legislative history confirms—they must be the sort of instrument issued by the government as part of a "large or discrete series." *Id.* at 588; *see* Commentary § 153 at 160 (stating that subparagraphs (A) and (B) were intended to "deal with instruments having an inherent pecuniary value, *constituting part of a larger issue by a government or business entity*" (emphasis added)). Because the falsified identification documents possessed by defendant neither have a readily ascertainable face value nor purport to be part of a larger issue of instruments by a government, the documents do not meet the definition of "other valuable instruments" in subparagraph (A). Accordingly, the trial court should have granted defendant's motion for a judgment of acquittal.

For the foregoing reasons, we conclude that the state failed to prove that defendant possessed items that purported to be "valuable instruments" within the meaning of ORS 165.013(1)(a)(A). That is the statutory paragraph and legal theory under which the state charged and tried defendant. We may not affirm defendant's conviction using a different legal or factual theory, and the state does not request that we do so. *See State v. Medina*, 357 Or 254, 267, 355 P3d 108 (2015) (although the state may have presented sufficient evidence for a jury to find the defendant guilty under a different legal theory, "the state is limited to the substantive allegations in the indictment" (citing, *inter alia*, *State v. Wimber*, 315 Or 103, 113-14, 843 P2d 424 (1992))); *see also State v. Burgess*, 352 Or 499, 508, 287 P3d 1093

(2012) (holding that "the state's failure" to pursue a separate factual and legal theory at trial "now precludes the state from successfully asserting that theory on appellate review as a means to sustain defendant's conviction").

Reversed and remanded.