*[641]
 
 TANZER, J.
 

 Defendant was convicted of disorderly conduct, second degree burglary, carrying a dangerous weapon with intent to use it, and unauthorized use of a vehicle. The charges arose from a one-day occupation of Mikami Brothers farm near Stanfield by defendant and seven others who had been hired for that purpose by one Thoren. Thoren claimed an interest in the farm and sought to prevent or delay the potato harvest and to interrupt what he thought was the adverse possession of the farm by Mikami Brothers.
 

 To occupy the farm, defendant and the others arrived early in the morning with guns, clubs and two dogs. They used the farm’s equipment to block the main entrance to the farm, and defendant turned away the farm employes with threats to arrest anyone who entered. They remained on the premises and inside at least two structures, including a large "potato shed,” until they surrendered to law enforcement officers late in the afternoon. At one point, one or more of the occupiers drove a Hyster forklift out of a shed and used it to construct a barricade and to remove a CB antenna from the roof of the nearby farm office.
 

 Defendant’s appeal challenges the convictions for burglary, carrying a dangerous weapon with intent to use it, and unauthorized use of a vehicle on grounds of statutory construction and sufficiency of the evidence. We affirm the convictions on all three counts.
 

 1.
 
 The burglary.
 

 The state’s theory of the burglary
 
 [1]
 
 was that defendant unlawfully entered and remained in a potato shed with the intent to commit the crime of criminal
 
 *[642]
 
 mischief
 
 [2]
 
 therein. Defendant urges two grounds for reversal. First, he argues that the potato shed was not a building for purposes of the burglary statutes. Although this argument was not raised at trial,
 
 State v. Perry,
 
 24 Or App 807, 547 P2d 187
 
 rev den
 
 (1976), it is easily resolved. ORS 164.205(1) provides:
 

 "As used in ORS 164.205 to 164.255, except as the context requires otherwise:
 

 "(1) 'Building,’ in addition to its ordinary meaning, includes any booth * * * or other structure adapted for overnight accommodation of persons or for carrying on business therein. * * *”
 

 The shed in question was large enough to hold several trucks, which were inside it on the day of this offense; the evidence shows that it is a substantial structure and thus a building within the ordinary meaning of the term and the language of the statute.
 

 Second, defendant contends that the evidence was insufficient to prove that he entered the shed with intent to commit the crime of criminal mischief. In a case like this, proof of such specific intent must necessarily be by circumstantial rather than direct evidence. The intent issue is for the jury to resolve unless the evidence could not, under any reasonable hypothesis, support a finding of the requisite
 
 mens rea. State v. Yost,
 
 28 Or App 803, 561 P2d 657
 
 rev den
 
 (1977). While it is unclear as to which mischievous events occurred in which sheds, there is clear evidence that during the occupation of the potato shed designated in this count of the indictment, the keys were removed from the trucks that were parked inside and that one set of keys was never recovered. Although
 
 *[643]
 
 there is no evidence as to who removed the keys, defendant is liable for the acts of his co-offenders by virtue of ORS 161.155(2)(b).
 
 [3]
 
 This evidence, especially when considered in the context of the circumstances, is sufficient to raise a jury question on the issue of defendant’s intent.
 

 
 *[642]
 
 "(2) Criminal mischief in the third degree is a Class C misdemeanor.”
 

 
 *[643]
 
 2.
 
 Carrying a dangerous weapon with intent to use it.
 

 [4]
 

 Defendant contends that there was no proof of his intent to use the weapon against a law enforcement officer, as alleged in the indictment. To the contrary, there was a presumption and testimony proving such intent. ORS 166.220(2) provides:
 

 "The carrying or possession of any of the weapons specified in subsection (1) [including a loaded firearm] of this section by any person while committing, or attempting or threatening to commit a felony or a breach of the peace or any act of violence against the person or property of another is presumptive evidence of carrying such weapon with intent to use the same in violation of subsection (1) of this section.”
 

 The presumption arises from evidence that defendant carried a cocked pistol, though in its holster, and that he stated to two police officers that he would meet force with force and firearms with firearms if the police moved in. When defendant surrendered, the gun was found to be loaded. The jury reasonably could infer that defendant intended to use his weapon.
 

 
 *[644]
 
 3.
 
 Unauthorized use of a vehicle.
 

 ORS 164.135(l)(a) provides:
 

 "A person commits the crime of unauthorized use of a vehicle when:
 

 "(a) He takes, operates, exercises control over, rides in or otherwise uses another’s vehicle, boat or aircraft without consent of the owner * *
 

 Defendant contends, by reference to the Motor Vehicle Code,
 
 [5]
 
 that a vehicle must be licensed for operation on public roads before its unauthorized use is a crime under ORS 164.135 and that his conviction must be reversed because the forklift truck in question was not so licensed.
 

 The legislature intended a broader definition of "vehicle” than that suggested by defendant. A statute which includes boats and aircraft cannot be thought to require licensure for highway use. The statute does not define or refer to any other statutory definition of the term "vehicle,” and the Commentary indicates that the drafters intentionally refrained from providing a restrictive definition. Proposed Oregon Criminal Code 143, Commentary, § 134 (1970). In the absence of a statutory definition, we look to the ordinary meaning of the word, i.e., a means of transporting something. The forklift truck is such a means. The statute is intended "to prohibit not only the taking or driving of another’s vehicle without permission but, also, to prohibit
 
 any
 
 unauthorized use of the vehicle.”
 
 Id.
 
 at 142. In addition to joyriding, this includes manipulating, starting or tampering with a motor vehicle,
 
 id.,
 
 none of which would require licensing or use on a highway. Since the prohibited activities may be performed anywhere, there is no reason to restrict the class of protected objects to licensed vehicles.
 

 Affirmed.
 

 [1]
 

 ORS 164.215 provides:
 

 “(1) A person commits the crime of burglary in the second degree if he enters or remains unlawfully in a building with intent to commit a crime therein.
 

 "(2) Burglary in the second degree is a Class C felony.”
 

 [2]
 

 ORS 164.345 provides:
 

 "(1) A person commits the crime of criminal mischief in the third degree if, with intent to cause substantial inconvenience to the owner or to another person, and having no right to do so nor reasonable ground to believe that he has such right, he tampers or interferes with property of another.
 

 [3]
 

 ORS 161.155(2)(b) provides:
 

 "A person is criminally liable for the conduct of another person constituting a crime if:
 

 "(2) With the intent to promote or facilitate the commission of the crime he:
 

 ‡ ‡ *
 

 "(b) Aids or abets or agrees or attempt to aid or abet such other person in planning or committing the crime * *
 

 [4]
 

 ORS 166.220(1) provides:
 

 "Any person who * * * with intent to use the same unlawfully against another, carries * * * any loaded pistol, revolver or other firearm * * * commits a Class C felony.”
 

 [5]
 

 ORS 482.030(4) defines "vehicle” as:
 

 "* * * every device in, upon or by which any person or property is or may be transported or drawn upon a public highway, except devices moved by human power or used exclusively upon stationary rails or tracks.”