Argued and submitted October 15, 1986, affirmed as modified July 22, 1987

STATE OF OREGON,
*Respondent,*

*v.*

ALVIN ALAN BARKER,
*Appellant.*

(C85-06-32369; CA A38574 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

KEVIN WAYNE PHELPS,
*Appellant.*

(C85-06-32331; CA A38575)
(Cases consolidated)

739 P2d 1045

M. Janise Augur, Tigard, argued the cause and filed the brief for appellants.

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Jeff Ellis, Certified Law Clerk, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendants appeal their convictions for burglary in the second degree and two counts of attempted burglary in the second degree. At issue is the meaning of the term "building" under the burglary statutes, defendants' request to have their convictions "merged," denial of their motions for separate trials and the amount of restitution ordered. We modify the sentence and affirm as modified.

The business burglarized by defendants was a commercial storage facility known as the Mini-Warehouse. It was comprised of several separate buildings enclosed by a chain-link fence. Each of the buildings consisted of self-contained storage units which were rented as individual storage spaces. Each unit was rented by a different individual. After a trial to the court without a jury, the court found that defendants had cut the locks on three of the storage units and had entered and stolen property located in one of them. As a result, they were found guilty of attempted burglary of two units and a completed burglary of one unit. They were also found guilty of criminal mischief for cutting the wire fence surrounding the facility. That conviction is not involved in the appeal.

■ Defendants were jointly indicted, and they both moved for separate trials. The motions were denied, and those denials are defendants' first claim of error. ORS 136.060(1) provides that when two or more defendants are charged with the same crime or crimes, they may be tried separately or jointly in the discretion of the court. In *State v. Tyson,* 72 Or App 140, 694 P2d 1003, *rev den* 299 Or 37 (1985), we said:

> "A trial court's denial of a motion to sever can be outside its discretion only when there is a compelling reason for granting the motion." 72 Or App at 143.

Defendants have not separately or jointly demonstrated a compelling reason for separate trials. The court did not err in denying the motion.

At the close of all the evidence, defendants moved for directed verdicts, contending that the storage units are not "buildings," as that term relates to burglary. Burglary in the second degree is the unlawful entry of a building with intent to commit a crime. ORS 164.215. "Building" is defined in ORS 164.205(1):

" 'Building,' in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein. Where a building consists of separate units, including, but not limited to, separate apartments, offices or rented rooms, each unit is, in addition to being a part of such building, a separate building."

On the basis of language in the Commentary to the Oregon Criminal Code, defendants argue that the statutory provision should be construed in the light of an underlying purpose of the burglary statutes—protection against invasion of premises which is likely to terrorize occupants.[1] Because storage units are not adapted for overnight use by human beings or for carrying on a business, defendants argue that they are not included in the definition of "building."

■ It is not necessary to examine the primary uses of the storage units to determine whether an unauthorized entry would be likely to terrorize any human occupants. Defendants' position ignores the plain language of ORS 164.205(1), which expressly incorporates the "ordinary meaning" of "building" and then specifies other things that are also included. Defendants cite *State v. Scott,* 38 Or App 465, 590 P2d 743 (1979), where we were called upon to apply the burglary statutes to a railroad car, a movable structure which is more like a vehicle than a building. Dictionaries define "building" as referring to any roofed and walled structure constructed for permanent use.[2] As we indicated in *State v. Essig,*

---

[1] Commentary to ORS 164.205 (§ 135) of the Oregon Criminal Code of 1971 (1975 ed), provides:

"Subsection (1). 'Building.' This definition is borrowed from Connecticut Penal Code § 110 and closely resembles the definition of the term in New York Revised Penal Law § 140.00 and the definition of 'occupied structure' in Model Penal Code § 221.0. Its purpose is to include those structures and vehicles which typically contain human beings for extended periods of time, in accordance with the original and basic rationale of the crime: protection against invasion of premises likely to terrorize occupants."

[2] Webster's Third New International Dictionary 292 (unabridged 1971), defines building as:

"**1:** a thing built: **a:** a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure — distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy **b:** a portion of a house occupied as a separate dwelling: APARTMENT, TENEMENT — used only in some legal statutes."

31 Or App 639, 571 P2d 170 (1977), *rev den* 281 Or 323 (1978), the ordinary meaning of the term building does not exclude stationary structures used for storage.[3]

A related inquiry is whether the forced entry of each storage unit should be classified as an independent burglary or whether, as defendants argue, the only "building" was the large structure consisting of the storage units. ORS 164.205(1) provides that, when a building consists of self-contained units, each unit is considered to be a separate building for the purposes of burglary. In this case, the central question of what is a "building" turns on the question of what is a "unit." In effect, we must consider whether defendants' attempting to gain entry to the units was more like opening drawers in a bureau than entering separate apartments in an apartment building. ORS 164.205(1) specifically lists "rented rooms" as one example of "units." The word "room" is commonly defined as "interior space enclosed by walls or separated from other similar spaces by walls or partitions."[4] Although the record does not contain evidence of the interior dimensions of the individual storage units, it does indicate that they are large enough for a human being to enter and move about. We conclude that the units are reasonably encompassed within the term "rooms."

Defendants also argue that their attempted burglary convictions should have been merged with their burglary convictions. Alternatively, they assert that the sentences should be concurrent rather than consecutive. When the same conduct or criminal episode violates only one statute, but involves two or more victims, there are generally as many separately punishable offenses as there are victims. *State v. Gilbert,* 281 Or 101, 574 P2d 313 (1978); *State v. Callaghan,* 33 Or App 49, 576 P2d 14, *rev den* 284 Or 1 (1978); *see* ORS 161.062(2). However, there may be an exception if the offenses result from a continuous and uninterrupted course of conduct. *See State v. Welch,* 264 Or 388, 505 P2d 910 (1973). In the present case, defendants attempted to enter two separate storage units and

---

[3] We held in *Essig* that a large potato shed used for storage was a "building" within the meaning of the burglary statutes.

[4] Webster's New World Dictionary 1264 (college ed 1968).

did enter a third, all leased to three separate parties.[5] They broke a lock on each unit, indicating that they had time to reflect and discontinue their criminal conduct at the door of each unit. Defendants manifested three independent criminal objectives and were properly convicted of three offenses.[6] Trial courts have the discretion to impose consecutive sentences when, as here, the underlying offenses reflect independent criminal objectives. *See State v. Kessler,* 297 Or 460, 686 P2d 345 (1984); *State v. Kyles,* 71 Or App 492, 498, 692 P2d 706 (1984), *rev den* 298 Or 773 (1985); *see also* ORS 137.122 (which was not in effect at time of trial).

In response to defendants' final assignment, the state concedes that the trial court's award of $45 in restitution for time lost by the Mini-Warehouse manager while testifying in court was improper.

Judgment modified to delete $45 of restitution; otherwise affirmed.

---

[5] This case is distinguishable from our opinion in *State v. Johnson,* 86 Or App 430, 739 P2d 1048 (1987). There, several misdemeanor thefts were aggregated into two felony theft charges where insufficient fund checks drawn on the same closed account were passed in the same business, in the same day, defrauding the same victim. Here, defendants burglarized separate storage units belonging to different victims.

[6] Although not effective until after the trial in this case, ORS 161.062(2) codifies principles which are applicable to this case. It provides, in part:

"Except as provided in subsection (3) of this section, when the same conduct or criminal episode violates only one statutory provision, but involves two or more victims, there are as many separately punishable offenses as there are victims. However, two or more persons owning joint interest in real or personal property shall be considered a single victim for purposes of determining the number of separately punishable offenses if the property is the subject of one of the following crimes:

"* * * * *

"(d) Burglary as defined in ORS 164.215 or 164.225."