Argued and submitted December 21, 2001, reversed in part; otherwise affirmed
August 7, 2002

# STATE OF OREGON,
*Respondent,*

*v.*

# JULIO MIKE PEÑA,
*Appellant.*

## 99100-114C3; A110131

51 P3d 646

Rankin Johnson IV, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, State Public Defender.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong and Kistler, Judges.

KISTLER, J.

**KISTLER, J.**

Defendant was convicted of first-degree burglary and third-degree assault. On appeal, he argues that the trial court should have granted his motion for judgment of acquittal on the burglary charge because he could not have committed a burglary in his own home. We agree and reverse the judgment in part.

Because this appeal arises from the denial of defendant's motion for a judgment of acquittal, we set out the facts in the light most favorable to the state. *State v. Goddard,* 178 Or App 538, 541, 37 P3d 1046, *rev den* 334 Or 121 (2002). Defendant and three other people leased a house together. Defendant, his mother Ester Peña, Tim Edwards, and Kurt Douglas signed the lease as tenants.[1] The lease makes defendant, along with the three other tenants, liable for the rent. It also requires that, when one of the persons who is listed as a tenant leaves, that person must give the landlord 30 days' notice "so [that] that person will not be held responsible for rent." Each of the tenants, including defendant, agreed to be responsible for any damages that occurred during the tenancy.

One evening, Douglas and Edwards went to a bar with Ester Peña. Edwards offended Peña when he poked her in the ribs. Later that night, Peña told defendant about the incident, and he became angry. He and two other men went to the house where he, his mother, and Edwards lived to retaliate for the slight his mother had suffered. After they entered the house, the three men opened the door to Edwards' bedroom and came partly into the room. They woke him up and asked him to come out to the living room. When Edwards came out into the living room, one of the men said, "We're here to fuck you up." Edwards ordered all of them to

---

[1] The lease states: "The parties signing below have read, understand, and agree to these terms and the terms on back" of the lease. The lease then provides signature lines for the tenants and one for the landlord. Defendant's name is written on the first signature line for the tenants. The lease also contains a "tenant check list." One question on the list asks for the name and birth date of "everyone living in [the] house." Under that question, defendant's name and birth date are listed along with the names and birth dates of the other tenants.

leave the house. They refused, and a fight ensued in which Edwards was injured.

The state charged defendant with conspiracy, third-degree assault, and first-degree burglary. At the close of the state's case, defendant moved for a judgment of acquittal on the burglary charge. He argued that he could not be guilty of a burglary because he could not unlawfully enter his own home. The state responded with a variety of theories as to how defendant could have committed a burglary. The court denied defendant's motion for judgment of acquittal but instructed the jury on only one of the state's theories of burglary. The jury found defendant guilty of burglary and assault but acquitted him on the conspiracy charge. The court entered judgment accordingly and defendant appealed, arguing that the trial court erred in denying his motion for judgment of acquittal on the burglary charge.

A person commits the crime of first-degree burglary if he or she enters or remains unlawfully in a dwelling with the intent to commit a crime therein. ORS 164.225; ORS 164.215.[2] To enter or remain unlawfully means to "enter or remain in or upon premises * * * when the entrant is not otherwise licensed or privileged to do so." ORS 164.205(3)(a). The issue in this case turns initially on whether defendant had a right to be on the premises. The state advances three theories why he did not; we consider each of the state's theories in turn.[3]

---

[2] ORS 164.225 provides, in part:

"A person commits the crime of burglary in the first degree if the person violates ORS 164.215 and the building is a dwelling[.]"

ORS 164.215 provides:

"(1) Except as otherwise provided in ORS 164.255, a person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein."

[3] Defendant contends that the state is limited on appeal to the single theory of burglary that the trial court permitted it to present to the jury. Defendant reasons that, because the trial court acquitted him on the state's other theories of burglary, double jeopardy bars the state from now relying on those theories as a basis for upholding the trial court's ruling. Because we hold that no rational juror could find for the state on any of the theories it urges on appeal, we need not resolve the issue that defendant raises.

■     The state argues initially that "a rational jury could conclude that defendant did not have lawful authority to be in the house and thus had entered it unlawfully with the intent to assault the victim." The evidence at trial, however, showed that defendant was a party to the lease. Several witnesses, including the landlord and Douglas, testified that defendant lived at the house. Defendant said that he had a key and had been living there for about a month, and Edwards reported that defendant had his own room and "came in and out of the house whenever he wanted to." That evidence establishes that defendant had a legal right, equal to that of the other tenants, to live in the house that he was charged with entering unlawfully.

The state relies on the following testimony to argue that the jury could nonetheless conclude that defendant lacked authority to enter the house:

"PROSECUTOR:   Did you have roommates?

"EDWARDS:   Yes.

"PROSECUTOR:   Are any of the roommates in the court-house—courtroom today?

"EDWARDS:   Well, [defendant] was staying out there. Wasn't supposed to but he was.

"PROSECUTOR:   And he ended up even getting put on the lease, is that correct?

"EDWARDS:   I never seen that. He didn't pay rent. I paid it."

In response to a question whether any of his roommates was present, Edwards said that defendant was staying at the house although he "[w]asn't supposed to." The state contends that a reasonable juror could infer from that statement that defendant was a trespasser whom the lawful tenants had not yet ejected. That inference is not a plausible one, however, when the statement is considered in the context of the other evidence at trial. The lease unequivocally gave defendant the same right to be in the house as the other tenants; Edwards testified that he had no knowledge of defendant's rights under the lease; and the other witnesses uniformly agreed that defendant was a tenant in the house. In

light of all the evidence before the jury, no reasonable juror could rely on Edwards' answer to find that defendant was not authorized to be in the house.[4] *See State v. King*, 307 Or 332, 339, 768 P2d 391 (1989) (employing that standard). The state's first theory provides no basis for denying defendant's motion for judgment of acquittal.

The state advances a second theory on appeal. It argues that, even if defendant were authorized to be in the common areas of the house, Edwards' bedroom was a "separate building," which defendant unlawfully entered with the intent to commit a crime therein. When a building "consists of separate units, including, but not limited to, separate apartments, offices or rented rooms, each unit is, in addition to being a part of such building, a separate building." ORS 164.205(1). The question whether a rented room is a separate building turns on, among other things, physical access, whether the unit is "self-contained," *State v. Jenkins*, 157 Or App 156, 160, 969 P2d 1048 (1998), and whether the units are individually rented, *State v. Barker/Phelps*, 86 Or App 394, 396, 739 P2d 1045 (1987). The only evidence presented on those issues was that the tenants expected that the other tenants would not enter their rooms without permission. However, none of the doors inside the house had locks, and all of the rooms were rented as one unit through a single payment under one lease.

Even if a reasonable juror could find from this evidence that Edwards' bedroom was a separate building, no evidence presented at trial showed that defendant entered the bedroom with the intent to commit a crime "therein." *See* ORS 164.215. As Edwards described the event, the men entered his bedroom and "[o]ne of them or I don't know who—you know, I was half asleep—said 'Can you come out here?' you know, so I got my robe on and they walked out when I got there and they were all three standing in front of me there [in

---

[4] Indeed, Edwards' answer has to be considered in connection with the question he was asked. The prosecutor asked if any of Edwards' roommates was present, and the apparent meaning of Edwards' answer was that defendant was not supposed to be one of his roommates, but he was. We also note that, to the extent the state relies on Edwards' statement that defendant "didn't pay rent," the question of who among several joint tenants pays the rent is irrelevant to the question of defendant's rights under the lease to occupy the house.

the living room]." That evidence shows only that defendant and the other men entered Edwards' room to ask him to come out to the living room, where they assaulted him. It does not show that they entered Edwards' bedroom with the intent to assault him there.

The state argues, however, that a reasonable juror could infer that defendant entered the bedroom with the intent to assault Edwards there if he refused to go out into the living room.[5] Nothing in the record suggests that, when defendant entered Edwards' bedroom, he had planned for the contingency that Edwards might refuse to leave his room and intended to assault him there if he refused to leave. It may be that defendant would have taken that course if Edwards had refused, but the question under the burglary statute is not what defendant would have done had things turned out differently. Rather, the question is what defendant intended to do either when he entered the bedroom or while he remained there. The evidence in this record does not permit a reasonable inference that defendant entered the bedroom with the intent to assault Edwards there or formed that intent while he remained in the bedroom.

■■ The state advances a third theory. It argues that, even if defendant lived in the house, he or his companions remained there unlawfully when they refused to obey Edwards' order to leave. That argument depends on the premise that one cotenant can prohibit what another cotenant authorizes. The state relies on *State v. Holte*, 170 Or App 377, 12 P3d 553 (2000), and *State v. Felt*, 108 Or App 730, 733-34, 816 P2d 1213 (1991), *rev den* 313 Or 75 (1992), as support for that proposition. Those cases, however, stand for the proposition that a tenant can limit or revoke the authority he or she extends to others. They do not hold that one cotenant can order another cotenant to leave, nor do they hold that one cotenant can prohibit what another cotenant authorizes—a premise that is inconsistent with our case law in related contexts. *See, e.g., State v. Rohrbach*, 93 Or App 608, 763 P2d 196 (1988) (cotenant with actual authority can

---

[5] The state does not argue that asking Edwards to walk out into the living room where defendant and his companions planned to assault him provides the requisite criminal intent for the burglary statute.

permit third party's entry or stay over the objection of a cotenant with equal authority). Because no reasonable juror could have found defendant guilty of first-degree burglary on this record, the trial court should have granted defendant's motion for judgment of acquittal.

Conviction of first-degree burglary reversed; otherwise affirmed.