Argued and submitted June 28, 2011, affirmed April 11, petition for review denied August 16, 2012 (353 Or 342)

**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**WYMAN LEE MACON,**
*Defendant-Appellant.*

Clackamas County Circuit Court
CR0300695; A142646

278 P3d 29

Susan F. Drake, Senior Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Erika L. Hadlock, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

## WOLLHEIM, J.

Defendant appeals a judgment of conviction for burglary in the second degree, ORS 164.215, based on his theft of a lockbox containing checks, receipts, and cash from a toy store storage room. Defendant assigns error to the trial court's denial of his motion for judgment of acquittal, asserting that the state failed to prove that defendant entered or remained unlawfully in a building within the meaning of ORS 164.205. We affirm.

The relevant facts are undisputed. Defendant entered a store called Toy Bliss during business hours, where he was greeted by a store manager, Boston. Boston asked defendant if she could help him, and he said that he was just going to look around. Defendant then walked throughout the store. Twenty to 30 minutes later, Boston saw defendant at the back of the store. He was near the entrance to a separate room closed off from the rest of the store that is used by employees for storage. The door of that storage room was between two display cases, designed to look like part of the wall. In effect, the door was concealed in plain sight. The door had no doorknob and was not marked in any way except for a crack in the wall. The door, although closed, was not locked because it led to a fire exit.

Boston then saw defendant walk rapidly toward the front of the store, hunched over a large bulge under his jacket. Boston followed defendant and asked him to stop, but he left through the front door. Boston later realized that the store's lockbox was missing from the storage room; the box had contained more than $750 in cash, store receipts, and customer checks. She also discovered that the exterior door to the storage room was unlocked, although it had been locked when she opened the store that morning.

Defendant was charged with burglary in the second degree.[1] A person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein. ORS 164.215(1). After the trial court instructed the jury, defendant moved for

---

[1] Defendant was also charged with and convicted of first-degree theft. That conviction is not at issue on appeal.

a judgment of acquittal on the burglary charge, arguing that the state had failed to establish that defendant entered or remained unlawfully in the toy store. Defendant argued that the toy store was open to the public and that he had neither entered nor remained unlawfully in that building. *See* ORS 164.205(3) (to "enter or remain unlawfully" means, among other things, "(a) [t]o enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so" or "(b) [t]o fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge"). In effect, defendant argued that the storage room was not a separate building and his entry into that part of the toy store—whether the storage room itself was open to the public or not—could not support a burglary conviction. The trial court denied defendant's motion and concluded that it was a question for the jury whether the storage room was open to the public and whether defendant remained unlawfully in the toy store. The trial court did not address the question of whether the storage room was a separate building.

On appeal, defendant argues that the trial court erred in denying his motion for two related reasons. First, defendant argues that the storage room was not a separate building under the burglary statutes and that the relevant "building" for purposes of his entry or remaining was the toy store as a whole. Second, assuming that to be the case, defendant contends that neither his presence inside the storage room nor his criminal intent were sufficient to revoke his license to be in the toy store generally. The state, meanwhile, responds that the trial court did not err, because the evidence sufficiently supported defendant's burglary conviction under either of two theories presented by the jury instructions: (1) entering the storage room, a "separate unit" within a building, with criminal intent; or (2) remaining in the toy store after losing the privilege to be there.

"We review a trial court's denial of a defendant's motion for judgment of acquittal to determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the elements of the

charged crime beyond a reasonable doubt." *State v. Vargas-Torres*, 237 Or App 619, 621, 242 P3d 619 (2010).

Defendant's arguments that the storage room was not itself a separate building under the burglary statutes and that defendant did not enter or remain unlawfully in the toy store as a whole raise questions of statutory interpretation. Applying the interpretive methodology required by *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), we give the text and context of the statutes primary consideration in the analysis. We may consider legislative history at any stage of analysis to illuminate and determine legislative intent. *Id.* at 172.

We begin with the text of ORS 164.215(1), which criminalizes the act of "enter[ing] or remain[ing] unlawfully in a building with the intent to commit a crime therein." The statutory construction question presented in this case requires a two-step analysis. First, we must identify the "building" at issue in this case—the toy store as a whole or the storage room in particular. Second, we must determine whether a jury could find from the evidence presented that defendant entered or remained unlawfully in the building at issue.

We turn, then, first to the question whether the storage room was a separate building under the burglary statutes. ORS 164.205(1) defines the term "building":

"'Building,' in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein. Where a building consists of separate units, including, but not limited to, separate apartments, offices or rented rooms, each unit is, in addition to being a part of such building, a separate building."

We have recognized that the ordinary meaning of "building" includes free-standing structures used for storage. *State v. Barker / Phelps*, 86 Or App 394, 397-98, 739 P2d 1045 (1987) (citing *State v. Essig*, 31 Or App 639, 571 P2d 170 (1977), *rev den*, 281 Or 323 (1978) (a large potato shed used for storage was a building within the meaning of the burglary statutes)). Nonetheless, an unlocked storage room *within* a

store is not a separate building under the ordinary meaning of the word. *Webster's Third New Int'l Dictionary* 292 (unabridged ed 2002) defines "building" as:

> "**1** : a thing built: **a** : a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy **b** : a portion of a house occupied as a separate dwelling : APARTMENT, TENEMENT—used only in some legal statutes * * *."

That plain meaning of the term "building" does not encompass the toy store's storage room, which is a part of the toy store building and is not a free-standing structure or a portion of a house occupied as a separate dwelling.

That is not the end of the inquiry, though, because ORS 164.205(1) expands the meaning of "building" beyond its "ordinary meaning." The second sentence of the statutory definition, once again, provides that, "[w]here a building consists of separate units, including, but not limited to, separate apartments, offices or rented rooms, each unit is, in addition to being a part of such building, *a separate building*." (Emphasis added.)

A "unit," in this context, refers to something that is "a constituent and isolable member of some more inclusive whole." *Webster's* at 2500. Consistently with that ordinary meaning, and the "common characteristics" of the nonexclusive examples of "separate units" listed in the statute, *see State v. Kurtz*, 350 Or 65, 75, 249 P3d 1271 (2011) ("Typically, statutory terms such as 'including' and 'including but not limited to,' when they precede a list of statutory examples, convey an intent that an accompanying list of examples be read in a nonexclusive sense."), we have focused the "separate unit" inquiry on whether the area was self-contained from its parent building, including secure physical access, separate function, and separate occupation. *State v. Peña*, 183 Or App

211, 51 P3d 646 (2002);[2] *State v. Jenkins*, 157 Or App 156, 969 P2d 1048 (1998); *State v. Handley*, 116 Or App 591, 843 P2d 456 (1992); *Barker/Phelps*, 86 Or App at 398.

In *Barker/Phelps*, for example, we held that storage units in a commercial storage facility, each locked and rented by separate owners, constituted separate buildings under the burglary statutes. *Id.* at 398. Similarly, in *Handley*, we held that locked storage lockers in the carport of an apartment complex, each rented by different tenants of the apartment complex, were separate buildings within the meaning of ORS 164.205(1). 116 Or App at 593-94.

In *Jenkins*, the issue was whether the area behind the bar of a tavern was a separate building. We relied on the rule in *Barker/Phelps* that "separate units within larger buildings are separate buildings [for purposes of our burglary statutes] when each is 'self-contained.' " *Jenkins*, 157 Or App at 160 (citing *Barker/Phelps*, 86 Or App at 398). The bar in *Jenkins* was open on both ends, its design offered little to impede access to the space behind it, and its function was encompassed by, and inseparable from, the purpose of the tavern. *Id.* at 158, 160. We contrasted the bar to complexes of self-contained units like apartments or an office building where the ability to control access to individual units was discrete, and where the use of individual units was usually separate from the use of units around it. *Id.* We concluded that the area behind a bar within a tavern was not a "separate unit." *Id.*

Here, unlike the bar area in *Jenkins*, the storage room of the toy store was a self-contained unit of the building with separate physical access (a camouflaged door), separate occupation (employees only), and separate function (storage and holding money rather than merchandising). Viewing that evidence of the storage room's characteristics in the light

---

[2] In *Peña*, we considered whether rented rooms in a house constituted separate units, but we did not resolve that issue, because the state presented no evidence that the defendant in that case had entered the room with the intent to commit a crime "therein." 183 Or App at 216; *see also State v. Cocke*, 334 Or 1, 3, 45 P3d 109 (2002) (individually rented rooms with locks were separate apartments even though the rooms were in a single house and the tenants shared other parts of the house).

most favorable to the state, we conclude that the state presented sufficient evidence that the storage room was a "separate unit" of the toy store and, therefore, a separate building for purposes of ORS 164.205(1).

Thus, the only remaining question is whether the state presented sufficient evidence that defendant unlawfully entered or remained in the storage room itself. *See* ORS 164.205(3)(a) (to "enter or remain unlawfully" means "(a) [t]o enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so"); ORS 164.205(4) (" 'Open to the public' means premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required."). And, on that point, defendant offers no argument; that is, he does not argue that the storage room (as opposed to the toy store) was open to the public or that he was licensed or privileged to enter the storage room. The trial court did not err in denying his motion for a judgment of acquittal.[3]

Affirmed.

---

[3] Because we conclude that defendant entered the storage room unlawfully, we need not address the parties' arguments regarding whether defendant remained unlawfully.