Submitted December 10, 2019, affirmed June 30, petition for review denied October 10, 2021 (368 Or 638)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MAYNOR PEREZ-SALAS,
*Defendant-Appellant.*

Washington County Circuit Court
17CR80432; A167794

492 P3d 95

Defendant appeals a judgment of conviction for first-degree burglary and second-degree criminal mischief. The charges were based on an incident in which defendant broke into his sister's locked bedroom and damaged some of her clothing; the two lived in a house rented from their uncle. Defendant assigns error to the trial court's denial of his motion for judgment of acquittal (MJOA) on the burglary charge, contending that the bedroom is not a separate "building" for purposes of the burglary statute and, therefore, the evidence was insufficient to convict him of that charge. *Held*: The evidence was sufficient to establish that the bedroom is a "building" within the meaning of the burglary statutes where defendant's sister paid rent directly to her uncle to live there, without regard to defendant's rent obligation; the bedroom was a separately secured, self-contained physical space; the sister was the exclusive occupant of the bedroom and defendant had no access to it; and the bedroom did not function as a component part of a building with a single unifying purpose, such as a family residence.

Affirmed.

James Lee Fun, Jr, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Laura A. Frikert, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Hannah K. Hoffman, Assistant Attorney General, filed the brief for respondent.

Before DeVore, Presiding Judge, and DeHoog, Judge, and Mooney, Judge.

DeHOOG, J.

Affirmed.

**DeHOOG, J.**

Defendant was convicted of first-degree burglary, ORS 164.225, and second-degree criminal mischief, ORS 164.354, after he broke into his sister's bedroom in the two-bedroom house where they both lived and sprayed liquid bleach on some of her clothing. He appeals, raising a single assignment of error, namely, that the trial court erred in denying his motion for a judgment of acquittal (MJOA) on the first-degree burglary charge. Specifically, defendant contends that his sister's locked bedroom in a single-family home is not a separate "building" or "dwelling" for purposes of the burglary statutes, and, therefore, the evidence was insufficient to convict him of that charge. We disagree and, accordingly, affirm.

To provide context for the dispute, we begin with the applicable statutes. As relevant here, a person commits first-degree burglary, a Class A felony, "if the person violates ORS 164.215 [second-degree burglary] and the building is a dwelling." ORS 164.225(1), (2). Second-degree burglary, which is a Class C felony, in turn, is committed "if the person enters or remains unlawfully in a building with intent to commit a crime therein." ORS 164.215(1), (2). ORS 164.205 provides, for purposes of those statutes, definitions of the terms "building" and "dwelling":

> "(1)  'Building,' in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein. *Where a building consists of separate units, including, but not limited to, separate apartments, offices or rented rooms, each unit is, in addition to being a part of such building, a separate building.*

> "(2)  'Dwelling' means a building which regularly or intermittently is occupied by a person lodging therein at night, whether or not a person is actually present."

(Emphasis added.)

In reviewing a trial court's denial of an MJOA, we view the evidence in the light most favorable to the state. *State v. Rodriguez,* 283 Or App 536, 537, 390 P3d 1104, *rev den*, 361 Or 543 (2017). We state the facts in that light.

Defendant and his sister, B, lived in a two-bedroom house that their uncle leased and then rented to them under an informal agreement. The uncle also used the property for parking his cars and equipment for his landscaping business. The rent amount was shared between defendant, B, and the uncle.[1] B paid her portion of the rent directly to her uncle. The uncle and/or defendant's mother paid defendant's share.[2] The uncle then paid the total amount to his landlord each month. Defendant and B were responsible for utilities.

Defendant and B shared common areas of the house, but they each had their own individual bedroom. The two had a difficult relationship. B's bedroom had a lock on it, which she used, and defendant did not have a key. Defendant was not permitted in B's bedroom at any time. At trial, B testified, "My room is my room, his room is his room." She also stated, "I never let [defendant] in my room. He can never be in my room. He's never allowed to be in my room, ever." When asked if she had made that clear to defendant, she testified, "He knows it a hundred percent." The siblings' uncle, who rented them the rooms, also testified that the bedrooms were meant to be separate.

One day, B came home and discovered that her locked bedroom had been broken into and there was bleach on some of her clothing items. Defendant admitted to officers that he had kicked in the door and sprayed bleach on B's clothing.

Defendant waived his right to a jury trial and tried his case to the court. At the close of the state's case-in-chief, defendant moved for judgment of acquittal on the burglary charge, arguing that B's bedroom was not "a separate unit or building from the rest of the house, [and] therefore not *** a dwelling under the burglary statute." The trial court denied the motion, explaining, in part:

> "[T]he question is whether or not there are either rooms or locations within that dwelling that can be identified through the facts as separate living spaces, because the character of the structure is still a dwelling."

---

[1] The record does not disclose the amounts that each was responsible for.

[2] The record is not entirely clear, but it appears that defendant typically did not pay his share of the rent himself.

"In this case, like other common circumstances, there are individual rooms that the occupants of the dwelling identified as their own particular living space or dwelling.

"In this case there is no doubt that the parties lived as though rooms were individualized units, private units, and they had an expectation of privacy in those individual rooms. No dispute on the evidence. The evidence is quite clear on that.

"Moreover, the circumstantial evidence would suggest that that's what the parties intended. The fact that [B] locked the door, there were no items of clothing, physical possessions, or any other items that the defendant possessed that were in [B's] room, and that he gained access to her room, allegedly, by forcing the door open, breaking the doorjamb, would indicate clearly that the parties treated the individual rooms with an expectation of privacy."

The court denied defendant's MJOA "for all those reasons."

The trial court ultimately found defendant guilty of first-degree burglary and second-degree criminal mischief. Defendant appeals, assigning error, as noted, to the denial of his MJOA.

On appeal, defendant repeats his contention that a single-family home that is maintained as such is a single building and that each bedroom is not a separate dwelling under the burglary statutes. He also advances a second theory, one not presented to the trial court, that, because B was not the *owner* of the property, she could not "unilateral[ly]," by locking her bedroom door, convert the house into a multiple dwelling unit.

The state responds, as it did at trial, that B's bedroom was a "rented room," qualifying as a separate unit or building under the burglary statutes, *see* ORS 164.205(1), and, thus, a dwelling, *see* ORS 164.205(2).[3] The state acknowledges that a locked door alone is not enough to establish that a bedroom in a house is a separate building, but contends that a reasonable factfinder could so find in this case based on the totality of the evidence presented—specifically, that the room was self-contained, that it was rented individually

---

[3] Defendant does not dispute that, if the bedroom is a building, it is also a dwelling, in that B regularly slept there. *See* ORS 164.205(2) (defining dwelling).

to B, that she always kept the door locked, and that only B had physical access to the room. We agree with the state.[4]

So framed, the question presented by this appeal is whether a reasonable factfinder could find that B's bedroom was a separate unit and, therefore, a separate building, such that defendant committed first-degree burglary when he entered or remained in the bedroom with the intent to commit a crime therein—specifically, second-degree criminal mischief. That, in turn, depends on the proper construction of the word "building," which we review for legal error. *Rodriguez,* 283 Or App at 540-41 ("When a trial court's denial of a defendant's motion for a judgment of acquittal depends on its interpretation of the statute defining the offense, we review the trial court's interpretation for legal error." (Internal quotation marks omitted.)).

As the parties recognize, our prior decisions—in particular, *Rodriguez*—guide the answer in this case. *See State v. Gonzalez-Aguillar*, 287 Or App 410, 412, 403 P3d 539 (2017) ("If we have previously construed a statute, and that construction controls the interpretive question on appeal, we adhere to our prior construction of the statute unless we conclude that the prior construction is 'plainly wrong.'" (Quoting *State v. Civil*, 283 Or App 395, 406, 388 P3d 1185 (2017).)). In *Rodriguez*, we confronted the issue whether the defendant's parents' locked bedroom in the house where defendant and his parents lived was a separate unit, and therefore a separate building for the purposes of the burglary statutes. 283 Or App at 539-40. Noting that we had not addressed the question before except in *dictum*,[5] we reviewed the legislature's definition of "building"—including the ordinary meaning incorporated therein—as well as our prior cases, and derived several salient characteristics inherent in the meaning of the term. *Id*. at 540 n 3, 541-43.

---

[4] Accordingly, we need not consider the state's alternative argument—that the record also supports a trespass theory of burglary, specifically, that defendant committed burglary when he exceeded the spatial scope of his license to be in the house by entering his sister's room.

[5] In *State v. Pena*, 183 Or App 211, 216, 51 P3d 646 (2002), we stated, in *dictum*, that "[t]he question whether a rented room is a separate building turns on, among other things, physical access, whether the unit is self-contained, and whether the units are individually rented." (Internal citations and quotation marks omitted.) *See Rodriguez*, 283 Or App at 540 n 3 (noting same).

Specifically, we held (somewhat obviously given the legislature's express definition) that "individual apartments and separately rented rooms" are considered to be separate buildings. *Id.* at 541 (citing ORS 164.205(1); *State v. Davis*, 261 Or App 38, 48, 323 P3d 276 (2014) (office suite on second floor of multistory office building was a separate unit within a building); *State v. Handley*, 116 Or App 591, 593-94, 843 P2d 456 (1992) (storage lockers in carport of apartment complex rented by different tenants were separate buildings); *State v. Barker/Phelps*, 86 Or App 394, 398, 739 P2d 1045 (1987) (separately rented self-contained storage units in a commercial storage facility were separate buildings)).

We also determined, based on our case law interpreting the term, that a significant factor in the determination is whether the area is "'self-contained from its parent building, including secure physical access, separate function, and separate occupation.'" *Rodriguez*, 283 Or App at 541-42 (quoting *State v Macon*, 249 Or App 260, 264, 278 P3d 29, *rev den*, 352 Or 342 (2012)); *see Macon*, 249 Or App at 265-66 (storage room of a toy store was separate unit from the store because it had separate physical access, separate occupancy by employees only, and a separate function from the rest of the store)). We contrasted *Macon* with *State v. Jenkins*, 157 Or App 156, 969 P2d 1048 (1998), in which we had determined that the area behind the bar in a tavern was *not* a separate building, in part, because of the unsecured physical access to the area, but also because the function of the bar is "'encompassed by, and inseparable from, the purpose of the tavern.'" *Rodriguez*, 283 Or App at 542-43 (quoting *Jenkins*, 157 Or App at 160).

Applying those principles to the facts in *Rodriguez*, we concluded that the evidence was insufficient to support a finding that the parents' bedroom was a separate unit from the rest of the house. That was so because (1) there was no evidence that any rooms in the house "were 'rented rooms' or treated by the family as separate apartments," *id.* at 541; (2) the function of the parents' bedroom was "inseparable" from the overall function of the house as a family residence, *id.* at 543; (3) occupation of the bedroom was not exclusive to defendant's parents—defendant had permission to enter the bedroom at certain times, and the door to the bedroom

was left open when his father was home, *id*. In those circumstances, the fact that there was a lock on the bedroom door did not itself "change the nature or function of the bedroom so that it became a self-contained, separate unit from the rest of the house." *Id*.

The circumstances in the present case are markedly distinct from *Rodriguez*. In this case, B paid rent to live in the house, and she separately paid her portion of the rent directly to her uncle, without regard to defendant's rent obligation. Her bedroom was a separately secured, self-contained, physical space, and, unlike in *Rodriguez*, its occupation was exclusive to her. B kept the door to the bedroom locked and defendant knew "a hundred percent" that he did not have permission to enter it at any time. In further contrast to *Rodriguez*, defendant in this case did not have access to the bedroom when the house's occupants were home. Instead, as B testified, defendant was "never allowed to be in [it], ever." In short, the bedroom functioned entirely as B's private space.

There is also nothing in the record to indicate that the house itself generally functioned as a "family residence," of which B's bedroom was simply a component, as in *Rodriguez*. Rather, a reasonable inference from the evidence is that, although they shared some common areas, defendant and B lived in the house independently. Put another way, they coexisted in the house, but there is no evidence that the two shared a "home," akin to a family residence, with a single unifying purpose. Considered in the light most favorable to the state, a reasonable factfinder could find from this record that B's rented bedroom was self-contained, with "secure physical access, separate function, and separate occupation" from the rest of the house. *See Rodriguez*, 283 Or App at 542 (internal question marks omitted); *id*. at 542-43 (identifying the same as inherent in the meaning of "building" under ORS 164.205(1)).

We disagree with defendant's suggestion that a bedroom in a building "maintained" as a "single-family home" can never be a separate building. As *Rodriguez* and our other case law makes clear, the gravamen of the inquiry is, instead, whether the room is separate in function and

purpose from the parent building, such that it "is, in addition to being a part of such building, a separate building." ORS 164.205(1); *Rodriguez*, 283 Or App at 541-43, *Macon*, 249 Or App at 264; *Jenkins*, 157 Or App at 159-60. As discussed above, that inquiry is satisfied by the evidence here.[6]

Given the specific circumstances present here, a reasonable factfinder could find that B's rented bedroom was a "building" for purposes of the burglary statutes. Because defendant does not dispute that if the bedroom was a building, it was also a dwelling, the evidence was thus sufficient to support defendant's conviction for first-degree burglary. The court did not err in denying defendant's MJOA.

Affirmed.

---

[6] We reject without discussion defendant's largely undeveloped argument, raised for the first time on appeal, that B lacked a cognizable property interest in the residence. Defendant also states, in a single sentence, that the denial of his MJOA also violated his due process rights under the Fourteenth Amendment to the United States Constitution, but he does not explain why that is different from his primary argument, or why it compels a different answer. We therefore do not address it.