Argued and submitted October 31, 2001, reversed February 6, 2002

## STATE OF OREGON,
*Respondent,*

*v.*

## LAWRENCE D. COLLINS,
aka Bernard Dean Mills,
*Appellant.*

9906-45661; A108615

39 P3d 925

Rebecca Duncan, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, Oregon Public Defender.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals from his conviction for criminal trespass in the second degree, ORS 164.245, based on his alleged violation of a Drug Free Zone (DFZ) exclusion order. We conclude that defendant's conduct, as proved at trial, did not constitute criminal trespass in that defendant did not "enter or remain unlawfully" in or upon premises within the meaning of ORS 164.205(3)(a) or (b). Consequently, we reverse defendant's conviction.

The material facts are undisputed. In March 1998, defendant was arrested for both possession and delivery of a controlled substance in an area that the City of Portland had designated a DFZ. On June 10, 1998, defendant appeared, waived his right to a jury trial, and pleaded no contest to a charge of delivery of a controlled substance, ORS 475.992(1)(b).[1] The court accepted the plea but deferred sentencing to June 16, 1998. On that date defendant again appeared, and the court pronounced its judgment of conviction and sentence. On the same date, pursuant to PCC 14.100 (1997), defendant was presented with, and signed, a notice of exclusion from Portland DFZs. That notice stated that defendant was excluded from DFZs for one year from defendant's "date of conviction."[2]

On June 12, 1999—more than one year after defendant entered his no contest plea (June 10), but less than one year after defendant's sentencing and concurrent receipt of the notice of DFZ exclusion (June 16)—two Portland police officers stopped defendant for jaywalking at about 3:30 a.m. near the intersection of Northwest 10th Avenue and Irving Street in the Old Town area. The place of the stop was within a designated DFZ. When one of the officers ran defendant's name through his computer, he learned that defendant was excluded from DFZs, and the officer told defendant that he was excluded. In response, defendant said that he thought

---

[1] The possession of a controlled substance charge was dismissed.

[2] The notice specifically stated: "Pursuant to the authority granted under Portland City Code Chapter 14.100, *upon conviction* for any of the above listed offenses, you are hereby excluded for a period of 1 year from the *date of conviction* from entering or remaining in any [DFZ]." (Emphasis added.)

the exclusion had expired. The officer again checked his computer, and it indicated that the exclusion was still valid for a few more days. The officers then arrested defendant for criminal trespass in the second degree.[3] Significantly for purposes of our analysis and disposition, the officers never asked defendant to leave the DFZ, and, concomitantly, defendant never refused such a request.

After the submission of all evidence in his ensuing bench trial, defendant moved for a judgment of acquittal on two grounds. First, defendant argued that he had not violated the DFZ exclusion order because that order was no longer in effect on June 12, 1999. In particular, defendant asserted that the "date of conviction" triggering the one-year exclusion under PCC 14.100.030 (1997)[4] was the date his plea of no contest was accepted by the court, June 10, 1998, and not the date of the judgment of conviction upon which he was sentenced and issued the DFZ exclusion notice, June 16, 1998. The trial court rejected that argument, concluding that the "date of conviction" triggering the one-year exclusion was the date of sentencing and concomitant receipt of the notice of exclusion.

Second, defendant argued that the state had failed to prove *scienter*. In particular, defendant asserted that the state was required to show that he knew at the time of the alleged trespass that the DFZ exclusion order was still in effect and that the only evidence on that question showed that defendant had a good faith belief that the order had expired on June 10, 1999:

---

[3] If an excluded person is caught within a DFZ during the exclusion period, that person is subject to immediate arrest for criminal trespass in the second degree under ORS 164.245. PCC 14.100.030 (1997).

[4] PCC 14.100.030 (1997) provided, in part:

"A person is subject to exclusion for a period of ninety (90) days from the public streets, sidewalks and other public ways in all drug-free zones designated in Code Chapter 14.100 if that person has been arrested based upon probable cause to believe that the person has committed any of the following [enumerated drug offenses] within a drug-free zone[:]

"* * * * *

"An additional one (1) year exclusion shall take effect *upon the date of conviction* for any of the [enumerated] offenses * * * if that offense was committed within any drug-free zone." (Emphasis added.)

> "In this case I think we put on evidence that [defendant] didn't enter and remain knowingly in violation of the [DFZ] ordinance. He did not go there on purpose to violate his exclusion. He really thought he was done and over with."

The trial court rejected that argument, concluding that defendant's knowledge that the exclusion order was still in effect was not an element of criminal trespass. Rather, the court ruled that so long as defendant knowingly entered an area from which he was, in fact, excluded, he was guilty of criminal trespass in the second degree regardless of whether he reasonably believed that the exclusion was no longer effective:

> "The evidence is pretty strong that the defendant didn't think the exclusion was still in effect. The issue is whether that is a necessary element of this charge.
>
> "Knowledge under the jury instruction is a person acts with an awareness either their conduct is of a particular nature or that a particular circumstance exists. The charging instrument is the defendant knowingly entered and remained on premises described as the [DFZ].
>
> "I believe the knowledge that's necessary that needs to be proven is that the defendant entered a [DFZ], and knew he was excluded. I don't believe that it is material that he has to know of the dates of the exclusion.
>
> "Has the evidence shown that the defendant knew that he entered the [DFZ]? The answer is clearly yes. * * * That's the knowledge issue that needs to be proven by the court. I'll enter a guilty finding.
>
> "I can understand the confusion thinking it was over. I don't find that to be the knowledge element that needs to be shown by the state under this charging instrument or by the statute or ordinance."

Consequently, the court convicted defendant without reference to the sufficiency of evidence as to his *scienter* that the exclusion order remained in effect at the time of the alleged trespass.

On appeal, defendant challenges both of those rulings, reiterating his arguments to the trial court. Ordinarily, as a jurisprudential and logical matter, we would address

defendant's first, "date of conviction" assignment of error before considering his second, *scienter*-based assignment. That is so because if defendant is correct as to the first assignment, he would be entitled to an outright reversal; while, in contrast, if defendant is correct as to his second assignment— that the trial court had erroneously identified the elements of the offense and had, consequently, failed to consider the sufficiency of the evidence as to an essential element—defendant would be entitled to a remand and a new trial but not outright reversal. *See State v. Andrews*, 174 Or App 354, 366, 27 P3d 137 (2001). That is, because the first assignment could yield more complete relief than the second, we would decide it first and then, only if we rejected it, address the second assignment.

In this case, however, we deviate from that order. In our preliminary analysis of the issues, it became apparent that the second, *scienter* assignment of error unavoidably implicated much broader, and more fundamental, issues of statutory construction. The second assignment of error could not be resolved without resolving those broader questions. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties."). As discussed below, the resolution of those questions, in turn, obviates any consideration of *scienter* because, when ORS 164.245(1) and ORS 164.205(3) are properly construed, defendant's *conduct* could not constitute criminal trespass in the second degree regardless of his mental state or the sufficiency of proof of his mental state. Thus—albeit for reasons different from those explicitly framed by the parties' briefing—our disposition of the second assignment of error results in an outright reversal, rendering any discussion of the first assignment gratuitous.

We turn, then, to the second assignment of error. ORS 164.245(1) (1997) provided:[5]

---

[5] ORS 164.245 was amended in 1999. Or Laws 1999, ch 1040, § 9. That amendment has no affect on the outcome of this case. All references to ORS 164.245 in this opinion are to the 1997 version.

"A person commits the crime of criminal trespass in the second degree if the person *enters or remains unlawfully* in or upon premises." (Emphasis added.)

ORS 164.205(3)[6] defines "enter or remain unlawfully":

"(3) 'Enter or remain unlawfully' means:

"(a)   To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so; or

"(b)   To fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge."

Finally, under ORS 164.205(4), "open to the public" means:

"[P]remises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required."

In this case, the indictment simply alleged, without amplification, that defendant "did unlawfully and knowingly enter and remain in and upon premises described as a public right of way located within a [DFZ] listed in Portland City Code 14.100.070[.]" That allegation was broad enough to potentially encompass either subsection (a) or (b) of the definition of "entering or remaining unlawfully."

In arguing that the state was obligated to prove that defendant knew that the exclusion order was still in effect at the time he entered the DFZ, defendant relies on *State v. Hartfield*, 290 Or 583, 624 P2d 588 (1981). In *Hartfield*, that defendant was convicted of arson and burglary in the second degree, ORS 164.215,[7] based on an incident involving the arson of a shoe store to destroy evidence of embezzlement. The store manager allegedly gave the defendant a key to the

---

[6] ORS 164.205(3) was amended in 1999 to reflect that a person can commit criminal trespass by entering or remaining in a motor vehicle. Or Laws 1999, ch 1040, § 10. That amendment has no bearing on this appeal.

[7] ORS 164.215(1) provides:

"Except as otherwise provided in ORS 164.255, a person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein."

store and paid him to set fire to the business at a time when the store was not open to the public. On appeal, after ordering a new trial based on nonproduction of an accomplice's grand jury testimony, the Supreme Court, for guidance on remand, addressed the defendant's potential culpability for burglary.

The court began by canvassing the legislative history of ORS 164.215 and concluded that that statute punished "criminal trespass with two aggravating factors: (1) that the premises invaded be a building, and (2) that the trespasser entered or remained with the intent to commit a crime in the building." 290 Or at 594. After observing that there was no "viable contention" that the state's proof of the aggravating factors was insufficient, the court framed the "sole question" as whether the evidence established the element of criminal trespass. *Id.* at 595. The court then addressed the requisite proof:

> "As noted, the premises were not open to the public, and this defendant's entry was unlawful, therefore, if his entry was not otherwise licensed or privileged.
>
> "Where one is permitted or invited to enter premises, not open to the public, the state must prove two elements in order to establish that his entry is 'not otherwise licensed or privileged.' The state must prove that the person extending the permission or invitation was without actual authority to do so *and that the entrant knew or believed there was no such actual authority.*" *Id.* (emphasis added).

Based on the emphasized language, defendant argues that, to establish unlawful entry for purposes of ORS 164.205(3)(a), the state must prove that defendant knew that his entry was, in fact, not "licensed or privileged." The state responds that *Hartfield* is inapposite because the alleged trespass here was the product of an unlawful entry within the meaning of ORS 164.205(3)*(b)*, not (3)*(a)*. At oral argument, the state further suggested that subsection (3)(a) refers only to premises that are not open to the public and that, because the premises here—a public street within the DFZ—was open to the public, subsection (3)(a) is inapposite. In response, and with our permission, defendant's appellate

counsel submitted a post-argument memorandum of additional authorities citing *State v. Ocean*, 24 Or App 289, 546 P2d 150 (1976), for the proposition that subsection (3)(a) is applicable to premises that are open to the public.[8]

■          Defendant's *scienter* argument with respect to subsection (3)(a) cannot be decided without analyzing *Ocean* and *Hartfield*. However, as we will endeavor to explain, those cases are ultimately irreconcilable in their statutory construction. Under the rule of prior construction, *Palmer v. State of Oregon*, 318 Or 352, 358, 867 P2d 1368 (1994), the Supreme Court's construction in *Hartfield* necessarily prevails and, under that construction, defendant's conduct in entering the DFZ could not constitute unlawful entering or remaining within the meaning of subsection (3)(a), regardless of whether the exclusion order was still in effect and regardless of defendant's *scienter*.

We begin with *Ocean*. In *Ocean*, the defendant, who had previously been given written notice of exclusion from Fred Meyer property for shoplifting, was apprehended at a Fred Meyer store in violation of the exclusion notice.[9] The evidence established that the defendant had entered the store with the intent to commit theft, and he was convicted of second-degree burglary. On appeal, the defendant assigned error to the trial court's denial of his motion for judgment of acquittal and argued, particularly, that his entry was not "unlawful" within the meaning of ORS 164.215 and ORS 164.205(3)(a).[10] The essence of the defendant's argument was that subsection (3)(a) did not apply to premises that were open to the public (as the store was): "Defendant argues that because of the words 'or' and 'otherwise' the second clause of paragraph (a) refers only to a time when the premises are not open[.]" *Ocean*, 24 Or App at 293. Thus, the success of the defendant's argument depended on construing "or" in subsection (3)(a) as conjunctive, not disjunctive.

---

[8] In response to defendant's memorandum of additional authorities, the state revised the position it had taken at oral argument and asserted that, given *Ocean*, defendant's conduct fell within ORS 164.205(3)(a).

[9] The exclusion stated that violation could result in arrest and prosecution for criminal trespass. *Ocean*, 24 Or App at 292.

[10] The parties in *Ocean* agreed that the defendant had not been charged under ORS 164.205(3)(b). 24 Or App at 293.

We rejected that construction. In so holding, we reviewed the legislative history of the 1971 Criminal Code Revisions and noted particularly that, in earlier drafts, the "or" had been an "and." *Id.* at 293. We then concluded:

"[I]n adopting its amended version the legislature intended that the clause following 'or' refer to a person who does not have a license to enter as a member of the general public even when the premises are otherwise open to the public." *Id.* at 294.

Thus, in *Ocean*, we construed "or" in subsection (3)(a) in the disjunctive—*i.e.*, as encompassing either entry into premises not open to the public or entry into any premises when the entrant was not otherwise licensed or privileged to do so.

That construction cannot be squared with the analysis and disposition in *Hartfield*, which was decided five years later and did not refer to *Ocean*.[11] As noted previously, 179 Or App at 391, the court in *Hartfield* held that to prove a criminal trespass in that case—which clearly involved entry into premises that were not open to the public at the time of entry—the state *also* had to prove that the "entry was not otherwise licensed or privileged." *Hartfield*, 290 Or at 595. That is, *Hartfield* construes "or" in subsection (3)(a) as being conjunctive.[12] Under the rule of prior construction, that reading is conclusive. *See, e.g., Palmer*, 318 Or at 358.

---

[11] *Ocean* has been cited in only one subsequent Oregon case, *see State v. Cargill*, 100 Or App 336, 786 P2d 208 (1990), *aff'd by an equally divided court* 316 Or 492, 851 P2d 1141 (1993), and then only for the innocuous proposition that "[o]rders that a known shoplifter not enter any of a company's stores or that a disruptive person leave a public hearing are lawful." *Id.* at 342.

After *Ocean*, the definition of criminal trespass in the first degree was amended to include the precise circumstance in *Ocean*. ORS 164.255 now provides, in part:

"(1) A person commits the crime of criminal trespass in the first degree if the person:

"* * * * *

"(b) Having been denied future entry to a building pursuant to a merchant's notice of trespass, reenters the building during hours when the building is open to the public with the intent to commit theft therein[.]"

[12] That construction is, at least, practical. A purely disjunctive reading would mean that anyone who enters premises not open to the public, even invitees, could be subject to prosecution for criminal trespass.

The consequence in this case is that defendant's criminal trespass conviction cannot be predicated on subsection (3)(a) because he did not enter or remain on "premises * * * not open to the public." Culpability, if any, can arise only under subsection (3)(b).

■      Under ORS 164.205(3)(b), "enter or remain unlawfully" means "[t]o fail to leave premises that are open to the public after being lawfully directed to do so by the person in charge." Unlike subsection (3)(a), subsection (3)(b) has never been construed, explicitly or implicitly, in a reported opinion.[13] We first consider the statute's text in context. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611-12, 859 P2d 1143 (1993).

The essential statutory language for our purpose is "fail to leave premises * * * after being lawfully directed to do so[.]" Two aspects of that language are especially significant. First, at the risk of absurd literalism, one cannot "leave" a place unless one is already there. *See Webster's Third New Int'l Dictionary*, 1287 (unabridged ed 1993) (defining "leave" in this sense as "go away or depart from"). That is, one cannot "leave" or "fail to leave" a place unless one has first entered that place. In that respect, "leave" and "enter" are temporally exclusive—and, ultimately, functionally converse—concepts. Second, in a related sense, the "entry or remaining" becomes unlawful only if one *fails* to leave *after* having been directed to do so. Again, the statute's syntax and structure establishes that entry must antedate, and is substantively distinct from, actionable "failure to leave."

Thus, if subsection (3)(b) is read literally, it does not encompass defendant's conduct. Although defendant did enter the DFZ in alleged violation of a preexisting exclusion order, he did not fail to leave after being directed to do so. Indeed, as described below, the officers never directed defendant to leave; they simply arrested him. At worst, assuming that the exclusion order was still effective, defendant *entered*

---

[13] In *State v. Riddell*, 172 Or App 675, 21 P3d 128, *rev den* 332 Or 430 (2001), and *State v. Vaughn*, 175 Or App 192, 28 P3d 636 (2001), we assumed that subsection (3)(b) applied to situations where the defendants reentered areas from which they had previously been excluded. The applicability of subsection (3)(b) in those circumstances was neither litigated nor challenged on appeal.

the DFZ in violation of the order; he did not fail to *leave after being lawfully directed to do so.*

The broader statutory context is consistent with that construction. Most obviously, subsection (3)(a) refers "to enter or remain in or upon premises"—as opposed to subsection (3)(b)'s "fail to leave" terminology. If the legislature had intended to punish unlawful entry into premises open to the public—and particularly entry in violation of exclusion orders—it could easily have proscribed mere "entry" under subsection (3)(b), rather than employing the "failure to leave" formulation.[14]

Finally, to the extent that there could be any arguable ambiguity in the statute following the "text in context" inquiry, the legislative history confirms the correctness of our construction. That history, and particularly the comments of Donald Paillette, the project director of the Criminal Law Revision Commission, shows that subsection (3)(b) was designed to address protests and sit-ins in public buildings by giving authorities the ability to prosecute those who failed to leave after having been directed to cease and desist. *See* Minutes, Senate Criminal Law and Procedure Committee, March 2, 1971, p 8.[15]

In sum, defendant did not "enter or remain unlawfully" within the meaning of either ORS 164.205(3)(a) or (b).

---

[14] Indeed, although it is not part of the statutory context because it was enacted after the enactment of ORS 164.205(3)(a) and (b), ORS 164.255(1)(b) imposes such culpability for reentry in violation of store exclusion orders. *See* 179 Or App at 392 n 9.

[15] Although the state does not so contend here, it might be argued that defendant had been directed to "leave" by virtue of the preexisting exclusion order. That is, that, from the date of its issuance, the DFZ exclusion order not only precluded defendant from entering, but also, concomitantly, required him to leave if he did enter.

That approach would, however, conflate the concepts of unlawful *entry* and unlawful *failure to leave*. In the circumstances presented here, one would necessarily, simultaneously mean the other. As described above, such a conflation cannot be squared with the statute's context, which explicitly differentiates between those concepts in subsections (3)(a) and (b). Moreover, as noted, the legislative history demonstrates that subsection (3)(b) was intended to address circumstances in which (1) a party enters the premises, (2) is lawfully directed to leave, and (3) then refuses to leave. That sequence did not occur here.

Accordingly, his conduct, regardless of his mental state, could not constitute criminal trespass in the second degree, ORS 164.245. His conviction must be reversed.

Reversed.