Argued and submitted August 21, 2013, conviction for second-degree burglary (Count 5) reversed; remanded for resentencing; otherwise affirmed February 12, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

NATHAN GENE DAVIS,
*Defendant-Appellant.*

Lane County Circuit Court
201007807; A146400

323 P3d 276

Andrew D. Robinson, Deputy Public Defender, argued the cause for appellant. On the brief were Peter Gartlan, Chief Defender, and Louis R. Miles, Deputy Public Defender, Office of Public Defense Services.

Jona Jolyne Maukonen, Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

NAKAMOTO, J.

## NAKAMOTO, J.

Defendant appeals a judgment of conviction for three counts of second-degree burglary, ORS 164.215, and one count of identity theft, ORS 165.800. Defendant challenges two of his convictions for second-degree burglary (Counts 3 and 5), arguing that the trial court improperly denied his motion for judgment of acquittal (MJOA) on those counts, because the evidence for each count was insufficient to show that he "unlawfully entered" a "building," as defined in ORS 164.205(3)(a) and (1), respectively. Defendant contends that he instead entered into public areas that could not be considered separate buildings. We conclude that, as to Count 5, the trial court erred in concluding that there was sufficient evidence to prove that defendant "unlawfully entered or remained" in a building and, therefore, reverse that conviction and remand for resentencing; otherwise, we affirm.

Second-degree burglary requires proof of three elements: the defendant (1) entered or remained unlawfully, (2) in a building, (3) with intent to commit a crime therein. ORS 164.215. We review the denial of an MJOA for whether a rational factfinder could find, after viewing the evidence in the light most favorable to the state and making reasonable inferences and credibility choices, that the state proved every element of the offense beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998).

Count 3 involved defendant's entry into the offices of Alternative Work Concepts (AWC), an organization that works with people with disabilities. AWC was located on the second floor of a multistory office building. A stairway and an elevator provided access to an interior hallway. The second door along that hallway led to AWC's office suite. There were no windows in AWC's office door or adjacent to it, the door was almost always locked, and the only sign on the door said "Alternative Work Concepts." Members of the public thus had to knock to gain entrance, and people visiting the office usually had appointments. The office common area directly behind AWC's office door contained a file cabinet, a large plant, a low table with a fax machine on it, and a chair, all lining a wall. Also in view of the door was a table with break-room or kitchen items spread across it, such as

a toaster, a coffee maker, plastic food containers, and paper plates and napkins. There was no reception desk or signage.

An employee, West, had a work area within the AWC office suite; there were also two interior offices within the suite. One morning in 2010, West was at work alone. When she left the office suite to use the restroom, she closed the door between the office common area and the hallway. When she returned, she saw defendant come out of an interior corner office. West had never returned to the AWC office suite to find someone she did not expect and asked defendant if she could help him. Appearing nervous, defendant said that he was looking for somebody and that he must have the wrong place. He quickly left. West then discovered that her wallet, which had been at her desk, was missing.

The events regarding Count 5 took place at the University of Oregon, specifically in Room 120 of Deschutes Hall—a building on the university campus that has several entrances. The front entrance to Deschutes Hall did not display signs restricting entry to students. Within Room 120, there was a front counter, behind which were two work stations and two interior offices. On the front counter was a computer facing outward, as well as handouts, office supplies, and a sign indicating that assistance was available in Room 120 B if no one was in Room 120 to provide it. Room 120 B was an interior office located behind the counter. The work stations and the interior offices could be accessed by walking around a pillar that abutted the front counter.

A department employee, Smith, worked in Room 120, at one of the work stations behind the front counter. Smith was an undergraduate coordinator who handled information about students' records. Her expected clientele was university students, prospective students, their parents, and faculty, although no signs restricted entrance into Room 120 to those types of people, and any member of the public could visit Room 120. She testified to an "expectation of privacy" in the area behind the counter. Immediately behind the counter were some work areas, including Smith's, with filing cabinets, desks, and other furniture. The furniture was arranged to create a "private area." At the end of the room were doors that Smith identified as the doors of the interior

offices. Smith testified that people ordinarily stopped at the front counter, but, if someone went behind the front counter, she would tell them to return to the counter.

One afternoon in 2010, Smith saw defendant behind the front counter near her desk. He appeared to be going to the front door. She asked if she could help him. He said, "Nope," and walked away. She later noticed that her wallet was missing from her purse, which was at her desk.

The state alleged in Counts 3 and 5 that defendant committed second-degree burglary by unlawfully entering or remaining in AWC and Room 120, respectively, with the intent to commit the crime of theft in each place. After the close of the evidence, defendant moved for a judgment of acquittal on all counts. As to Counts 3 and 5, defendant raised the questions of whether he had entered or remained unlawfully on each of the premises and whether the evidence established that those premises were buildings under the burglary statute. The trial court denied defendant's MJOA.

On appeal, defendant again contends that the trial court erred because there was insufficient evidence to prove that AWC and Room 120 were "not open to the public"—and therefore that he had unlawfully entered or remained in those places—and that the places he entered were "buildings" as defined by ORS 164.205(1). As to defendant's challenge to the evidence regarding "unlawful entry," defendant first asserts that, under ORS 164.205(3)(a), to establish that he "unlawfully entered or remained" in AWC and Room 120 the state was required to prove that those locations were "not open to the public." Second, he argues that the state failed to adduce adequate evidence that the locations were not "open to the public."

Defendant is correct on the applicable law. Under ORS 164.205(3)(a), the state had to prove that AWC and Room 120 were "not open to the public." Second-degree burglary is defined in ORS 164.215, in relevant part, as follows: "(1) * * * a person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein." The phrase

"enter or remain unlawfully" is defined, as relevant here, in ORS 164.205(3):

"'Enter or remain unlawfully' means:

"(a) To enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so[.]"

The Supreme Court has construed the requirements in subsection (3)(a) as being conjunctive. In *State v. Hartfield*, 290 Or 583, 595, 624 P2d 588 (1981), the court explained that, in that case, "the premises were not open to the public," and so the "defendant's entry was unlawful *** if his entry was not otherwise licensed or privileged." Thus, under ORS 164.205(3)(a), the state must prove two elements to establish that a defendant "unlawfully entered or remained" in a building: (1) the defendant entered or remained in a building that is not open to the public and (2) the defendant was not otherwise licensed or privileged to be there at the time. *See State v. Collins*, 179 Or App 384, 393-94, 39 P3d 925 (2002), *rev dismissed*, 335 Or 656 (2003) (noting that, under *Hartfield*, the "or" in subsection (3)(a) is conjunctive, and concluding that, as a result, the "defendant's criminal trespass conviction [could not] be predicated on subsection (3)(a) because he did not enter or remain on 'premises *** not open to the public'" (omission in original)).

With that in mind, we consider whether a rational factfinder could conclude that the state met its burden as to Counts 3 and 5. We begin with Count 5 because defendant's argument that the state's evidence conclusively established that Room 120 was open to public is dispositive to our resolution of defendant's assignment of error relating to that count.

For purposes of the burglary statute, premises that are "open to the public" are "premises which by their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required." ORS 164.205(4). "In other words, the premises must in some way—physically or as a matter of custom or through 'other circumstances'—objectively cause a

reasonable person to believe that he or she is free to enter or remain on the property without permission, even if subjectively the owner intends the property to be private and requires permission to be there." *State v. Hinton*, 209 Or App 210, 216, 147 P3d 345 (2006) (interpreting the definition of "open to the public" under ORS 164.205(4), in the context of criminal trespass).

Defendant, relying on *State v. Pittman*, 223 Or App 596, 196 P3d 1030 (2008), argues that he entered Deschutes Hall when it was open to the public because access to Room 120 was not limited, nor were there doors separating Room 120 from the remainder of Deschutes Hall; the front counter contained a computer and other items indicating that the area was "open to the public"; and no door separated the area behind the counter to indicate that it was a private area. From that evidence, defendant argues that, as in *Pittman*, there was nothing about the area that indicated to defendant that he needed permission to enter the area behind the counter—even though Smith, a university employee, testified that she expected it to be private—and, thus, nothing about the "physical nature, function, custom, usage, notice or lack thereof or other circumstances" of Room 120 would have caused a reasonable person to believe that it was not open to the public.

The state asserts that a factfinder could determine from the evidence that Room 120 was not open to the public. In support of that argument, the state focuses on the characteristics of the counter and the victim's work station behind the counter, arguing that a person had to go around a pillar to reach the work stations and that the work stations contained items that indicated that they were not for public use.

We initially clarify the precise issue we decide. Both defendant and the state make arguments about whether the area behind the counter in Room 120 was "open to the public." That inquiry, however, is misplaced. Whether that area is "open to the public" is only relevant if that area is a separate unit or "building" within Room 120. *See State v. Jenkins*, 157 Or App 156, 158, 969 P2d 1048 (1998) (there, the defendant was at a tavern that was open to the public

when he jumped over the bar to commit a robbery; the issue on appeal was whether the area behind the bar was a "separate building" such that the defendant's entry behind the bar was a burglary under the statute). The state, however, acknowledges that it did not assert at trial that the area behind the counter in Room 120 constituted a separate unit or a separate "building" under the burglary statute. Therefore, for the purpose of our analysis, we need not decide whether the area behind the counter was "open to the public." Rather, we need only decide whether there was sufficient evidence for the factfinder to determine that defendant's entry into Room 120 itself was entry into premises that were "not open to the public."

We agree with defendant that the evidence was lacking and that *Pittman* provides support for his position. In *Pittman*, we considered whether a wholesale floral business located in a warehouse was "open to the public" for purposes of the burglary statute. 223 Or App at 598-99. At trial, the business owner testified that the business was a wholesale store that was not open to the public. Further evidence at trial established that the business was located in a "warehouse-type building" and that the intended clientele was retail florists. *Id.* at 600. There was also evidence that customers entered the store through automatic sliding doors and were met at a front-counter area by a cashier and a sign that stated "Cashier/Please Pay Here." *Id.*

We explained that, although the business was a wholesale business and its intended clientele was retail florists, "the wholesale operations and desired clientele * * * would not lead a person to believe that only retail florists were allowed to enter," and that "[t]he nature of the business would not inhibit the entry of delivery persons, job applicants, salespeople, or persons curious about flowers." *Id.* From that evidence we concluded that, "[e]xcept for the wholesale nature of the business, there was no evidence that the physical layout or use of the building, notice of its operations, or any other circumstances would lead a reasonable person to conclude that permission to enter or remain was needed." *Id.*

Legally, Room 120 is similar to the floral warehouse in *Pittman*. Although Room 120 is located within Deschutes Hall, access to both that building and Room 120 was open to the general public and was not restricted to certain people. Though Smith testified that her expected clientele was university students, staff, faculty, and family members, she also testified that any member of the public could visit Room 120. Additionally, like the floral warehouse in *Pittman*, Room 120 had a front counter with indications that the room was accessible by the general public (a computer that the public could use and handouts). It also had a sign indicating that access to an interior office located behind the counter was allowed if no one was available to offer assistance.

Even when viewing that evidence in a light most favorable to the state, a rational factfinder could not find that access to Room 120 was limited to certain groups of people, that the general public could not visit Room 120 for information or assistance, and that there was anything to indicate to a reasonable person that permission was required to enter or remain in Room 120. We note, as we did in *Hinton*, that the relevant inquiry is whether a reasonable person would believe that Room 120 was open to the public—regardless of whether the employees intended access to be restricted. We hold that a rational factfinder could not conclude based on the state's evidence, that Room 120 was "not open to the public" within the meaning of ORS 164.205(3)(a). Accordingly, the trial court erred when it denied defendant's MJOA on Count 5.

We now turn to Count 3 and defendant's entry into the AWC office suite. Defendant argues that a reasonable person would have believed that the AWC office suite was "open to the public" because the door to the office suite was unlocked; nothing on the door indicated that it was not open to the public or that one needed permission to enter; he entered the suite from a public hallway; and there was a common area just inside the office suite with furnishings that he argues indicated it was a waiting room. For its part, the state argues that, when viewed in the light most favorable to the state, the evidence at trial was sufficient for a reasonable factfinder to conclude that the AWC office suite

was not open to the public at the time that defendant entered it. We agree with the state.

As the state correctly points out, the AWC office suite in this case stands in stark contrast to the floral business in *Pittman*. The AWC office suite was located on the second floor of a larger office building. Neither the door nor the walls adjacent to it contained windows or signs indicating that the office was open to the public. Upon entering the office suite, there is no reception or customer service desk or signs signaling to people that AWC provided services to the general public. Rather, one sees a common area containing a file cabinet and a fax machine and a table with break-room equipment and supplies.

Additionally, evidence at trial established that, at the time defendant entered the AWC office suite, no AWC employees were present. That fact is particularly persuasive considering that the burglary statute focuses our inquiry regarding whether the premises are "open to the public" on the time at which defendant entered those premises. *See* ORS 164.205(3)(a) (an "unlawful entry" occurs when, a person enters or remains in or upon premises "when the premises, *at the time of such entry or remaining*, are not open to the public * * *" (emphasis added)). The fact that no employees were present in the AWC office suite when defendant entered, coupled with what was visible from the office door upon entry, weighs against a conclusion that a reasonable person, under those circumstances, would believe that he or she did not need permission to enter or remain in the AWC office suite. We hold that the state met its burden to "produce objective evidence of the nature, custom, function, and usage of the premises sufficient for a rational factfinder to reasonably infer" that the AWC office suite was not open to the public when defendant entered.[1] *Pittman*, 223 Or App at 600-01.

In light of that conclusion, we now turn to defendant's other argument: that his MJOA on Count 3 should have been granted because the state's evidence was insufficient

---

[1] Because we conclude that the AWC office suite was "not open to the public," as defined in ORS 164.205(3)(a), we need not discuss defendant's arguments that West's work area inside that office suite was "open to the public."

to establish that he entered a "building." For purposes of the burglary statute, a "building" is defined in ORS 164.205(1) as follows:

> "'Building,' in addition to its ordinary meaning, includes any booth, vehicle, boat, aircraft or other structure adapted for overnight accommodation of persons or for carrying on business therein. Where a building consists of separate units, including, but not limited to, separate apartments, offices or rented rooms, each unit is, in addition to being a part of such building, a separate building."

In denying defendant's MJOA, the trial court concluded that AWC had a separate office space in a building consisting of separate units and, therefore, that AWC's offices constituted a separate building. On appeal, the state again contends that defendant committed burglary at AWC's offices by entering a "separate unit" within a building with criminal intent.

In contrast, defendant's argument on appeal focuses solely on whether West's work area within the AWC office suite was a "separate building" for purposes of the burglary statute. Defendant implicitly contends that, because the AWC office suite itself was "open to the public," it cannot constitute a "building" relevant to the MJOA, asserting that AWC's door was unlocked and that he immediately encountered what appeared to be a waiting room that would lead a reasonable person to believe the suite was open to the public. Defendant then emphasizes that West's work area was located in a fairly open part of AWC's offices. Relying on *State v. Peña*, 183 Or App 211, 51 P3d 646 (2002), and *Jenkins*, 157 Or App 156, he contends that the trial court erred by denying his MJOA.

Defendant's argument is unavailing in light of our determination, as explained above, that a rational factfinder could conclude that the state met its burden to show that defendant's entry into the AWC office suite was unlawful because, at the time he entered, it was "not open to the public." Therefore, we determine whether there was sufficient evidence from which a factfinder could find that the AWC office suite was a "building" under the burglary statute. As the state correctly argues, there was ample evidence to

establish that the AWC office suite had a use and physical identity distinct from the rest of the office building in which it was located and, therefore, fell within the statutory definition of a separate unit within a building. *See Jenkins*, 157 Or App at 160 (giving weight to whether an area has a distinct use and physical identity). There is no question that AWC controlled access to its office suite and that the use of the AWC suite was separate from the use of the other office suites around it. We conclude, therefore, that a rational factfinder could find that the state met its burden to establish that defendant unlawfully entered a building when he entered the AWC office suite. Defendant concedes that there was sufficient evidence of his intent to commit theft when he entered and that he was not licensed or privileged to enter West's work area. Accordingly, we affirm the trial court's denial of defendant's MJOA on Count 3.

Conviction for second-degree burglary (Count 5) reversed; remanded for resentencing; otherwise affirmed.