Submitted May 28, affirmed August 13, petition for review denied
December 11, 2014 (356 Or 575)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DANIEL CARLYON ETZEL,
*Defendant-Appellant.*

Linn County Circuit Court
12010200; A151425

333 P3d 1147

Peter Gartlan, Chief Defender, and Lindsey K. Detweiler, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

**GARRETT, J.**

Defendant was convicted of one count of burglary in the second degree, ORS 164.215, after he walked through the unlocked front door of the Albany Tennis Club (the club) and stole items from a purse that had been left in the women's locker room. On appeal, defendant makes two assignments of error. First, he argues that the trial court erroneously denied his motion for a judgment of acquittal because the state failed to prove that the club was "not open to the public." Second, defendant argues that the trial court plainly erred when it instructed the jury on the elements of the crime of second-degree burglary. We reject defendant's first assignment of error and decline to exercise our discretion to correct his second assignment of error. We, therefore, affirm.

Because defendant appeals the denial of his motion for a judgment of acquittal, we review the evidence in the light most favorable to the state. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). The club's facilities include indoor and outdoor tennis courts, a swimming pool, and locker rooms. A visitor to the club would walk from the parking lot along a concrete pathway to the front door of the building. To the left of the pathway is a fence and gate that leads to the pool and outdoor tennis courts. A sign on the fence reads, "Albany Tennis Club" and "Memberships Available." Another sign on the gate reads, "All Members & Guests Must Sign In Before Use." On the door to the main building is yet another sign that provides a telephone number for people to call for "Albany Tennis Club Membership Info."

Once inside the club, a visitor would see a desk up against the right-hand wall. The desk is not staffed by a person. A computer and a notebook used to reserve tennis courts would be sitting on the desk. To the left, a stairway leads up to a viewing area that overlooks the tennis courts. A short hallway leads to a gray door marked "Exit." Down that hallway on the left-hand side are the doors to the men's and women's locker rooms.

The main door to the building is usually locked. An electronic card reader allows members to unlock the

door. Sometimes the door is left unlocked in order to allow nonmembers to access the club; for example, when the club is hosting junior tennis classes, the door is typically left unlocked so that nonmembers (who pay a fee to participate) may enter.

On January 10, 2012, the door was unlocked from approximately 2:45 p.m. to 5:00 p.m. to allow access to a nonmember parent of a child who was taking junior tennis lessons. The parent had called ahead to obtain permission to enter. At approximately 3:00 p.m., one of the club's members, Dwier, arrived at the club for a tennis lesson. Dwier left some personal belongings, including her purse, in the women's locker room. After returning from her lesson, Dwier discovered that her purse was missing from the locker room.

Dwier's purse was later spotted lying in the street near the club. Several items were missing. Police arrived and reviewed the club's video surveillance footage from that afternoon. The video showed that defendant, wearing a brown jacket, had walked through the front door, down the hallway towards the locker rooms, and then walked out the front door. The video did not show defendant carrying a purse. Defendant is not a member of the club and did not ask permission to enter the building.

Several weeks later, police encountered and arrested defendant. Defendant was wearing the brown jacket from the video.

Defendant was charged with one count of burglary in the second degree, ORS 164.215, and one count of theft in the second degree, ORS 164.045. With respect to the burglary charge, the original indictment alleged that "defendant *** did unlawfully and knowingly enter and remain in a room with restricted access (women's locker room) in a building with restricted access (Albany Tennis Club) *** with the intent to commit the crime of theft therein[.]" On defendant's motion, the trial court struck the phrase referring to the women's locker room from the indictment.[1] Thus, to convict defendant of second-degree burglary, the state was required to prove that defendant "unlawfully and knowingly"

---

[1] That ruling is not at issue on appeal.

entered the club, which is a "building with restricted access." Immediately after the court granted defendant's motion to strike, defendant moved for a judgment of acquittal on the burglary charge. Defendant argued that the state had failed to prove that, at the time that defendant entered the club, the building was "not open to the general public." The trial court denied defendant's motion.

The trial court instructed the jury on the crime of second-degree burglary as follows:

> "Oregon law provides that a person commits the crime of Burglary in the Second Degree if the person enters or remains unlawfully in a building with the intent to commit a crime therein. * * *

> "To 'enter or remain unlawfully' is defined as to enter or remain in or on the premises when the premises at the time of such entry or remaining are not open to the public, or when the entrant is not otherwise licensed or privileged to do so."

Defendant did not object to that jury instruction. The jury convicted defendant of the burglary count and acquitted him of the theft count.

On appeal, defendant reprises his argument that a judgment of acquittal was required because the state failed to establish that the club was "not open to the public" at the time that defendant entered the building. Alternatively, defendant argues that the trial court committed plain error when it instructed the jury on the definition of to "enter or remain unlawfully."

When reviewing a motion for a judgment of acquittal, "the relevant question is 'whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Mejia*, 348 Or 1, 6, 227 P3d 1139 (2010) (quoting *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989)). The crime of second-degree burglary is defined by ORS 164.215(1), which provides, in relevant part, that, "a person commits the crime of burglary in the second degree if the person enters or remains unlawfully in a building with intent to commit a crime therein." The phrase "[e]nter or remain unlawfully," in turn, is defined by ORS

164.205(3). That statute provides, as relevant here, that "[e]nter or remain unlawfully" means, as relevant here, "[t]o enter or remain in or upon premises when the premises, at the time of such entry or remaining, are not open to the public or when the entrant is not otherwise licensed or privileged to do so." ORS 164.205(3)(a). As we have previously noted, the Supreme Court has construed the requirements in that subsection as being conjunctive. *See State v. Collins*, 179 Or App 384, 393, 39 P3d 925 (2002), *rev dismissed*, 335 Or 656, 75 P3d 899 (2003) (construing *State v. Hartfield*, 290 Or 583, 624 P2d 588 (1981)). That is, "the state must prove two elements to establish that a defendant 'unlawfully entered or remained' in a building: (1) the defendant entered or remained in a building that is not open to the public and (2) the defendant was not otherwise licensed or privileged to be there at the time." *State v. Davis*, 261 Or App 38, 42, 323 P3d 276 (2014) (citing *Collins*, 179 Or App at 393-94).

Defendant's first assignment of error asks us to conclude that, based on the evidence at trial, no rational juror could have found that the club was "not open to the public." Premises are "[o]pen to the public" when "their physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe that no permission to enter or remain is required." ORS 164.205(4). That standard is an objective one. As we explained in *State v. Hinton*, 209 Or App 210, 216, 147 P3d 345 (2006),

"the premises must in some way—physically or as a matter of custom or through 'other circumstances'—objectively cause a reasonable person to believe that he or she is free to enter or remain on the property without permission, even if subjectively the owner intends the property to be private and requires permission to be there."

For example, in *State v. Pittman*, 223 Or App 596, 598, 196 P3d 1030 (2008), the defendant was convicted of second-degree burglary after he entered a "floral wholesale business" with the intent to commit the crime of theft. The business sold "flowers and floral supplies to retail florists" but did not "transact retail business with the general public." *Id.* We concluded, however, that "the state failed to meet

its burden to produce objective evidence that a reasonable person would believe that permission to enter or remain was required." *Id.* at 599-600 (brackets and quotation marks omitted).

In reaching that conclusion, we observed that the state had produced evidence that "the intended clientele of the business was retail florists[.]" *Id.* at 600. That evidence included "[t]he business name and exterior sign stat[ing] that the business is 'wholesale'" and the fact that, "[t]he business was located in a warehouse-type building." *Id.* (internal quotation marks omitted). We reasoned, however, that those factors alone "would not lead a person to believe that only retail florists were allowed to enter." *Id.* That is, "[t]he nature of the business would not inhibit the entry of delivery persons, job applicants, salespeople, or persons curious about flowers." *Id.*

We also noted that other evidence objectively suggested that the business *was* open to the public. No signs indicated that permission to enter was required, and entry into the building was not physically restricted in any way. *Id.* Moreover, the front area of the business was arranged much like a retail business with a "front counter area," a "cashier on duty," and "[f]lowers and supplies" being displayed for sale. *Id.* For all of those reasons, we concluded that the trial court erred by not granting defendant's motion for a judgment of acquittal. *Id.* at 600-01.

A more recent burglary case involved the defendant's entry into the office suite of Alternative Work Concepts (AWC), an organization that works with people with disabilities. *Davis*, 261 Or App at 39. We concluded that the characteristics of the office suite stood "in stark contrast to the floral business in *Pittman.*" *Id.* at 46. We noted that

> "[n]either the door nor the walls adjacent to it contained windows or signs indicating that the office was open to the public. Upon entering the office suite, there is no reception or customer service desk or signs signaling to people that AWC provided services to the general public. Rather, one sees a common area containing a file cabinet and a fax machine and a table with break-room equipment and supplies."

*Id.* In addition, no AWC employees had been present when the defendant entered the office suite. *Id.* (noting that "the burglary statute focuses our inquiry regarding whether the premises are 'open to the public' on the time at which defendant entered those premises"). Based on those considerations, we held the state's evidence to be sufficient. *Id.*

In this case, we conclude that a rational fact-finder could have found that the club was "not open to the public." The record indicates that the club is more like the office suite in *Davis* than the floral wholesale business in *Pittman.* The only fact that tends to support defendant's argument that the club was open to the public is that the main door happened to be unlocked at the time that defendant opened it. Other facts support the conclusion that access was restricted. These include the electronic card reader next to the door; the various signs referring to "members" and "membership"; and the name of the facility itself. Those factors support a conclusion that the club's "physical nature, function, custom, usage, notice or lack thereof or other circumstances at the time would cause a reasonable person to believe" that the general public did not have unfettered access. ORS 164.205(4).

Defendant argues that, even if club access was generally restricted to members, "a potential new member to the club would clearly be permitted to enter du ring business hours and inquire about a membership." Defendant's position find some support from *Pittman,* where we noted that a sign indicating that a business is "wholesale" would "not inhibit the entry of delivery persons, job applicants, salespeople, or persons curious about flowers." 223 Or App at 600. This case lacks other factors, however, that were important to our conclusion in *Pittman,* including the presence of a "front counter area" and a "cashier on duty." Here, the club has no general reception area where a staff member might be available to interact with prospective members or other visitors. Defendant, like any other person walking through the front door, saw nothing more than a desk pushed up against the wall, a computer and log book, and an empty hallway leading to the locker rooms. This case, therefore, more closely resembles *Davis.*

We conclude that the jury could reasonably have concluded that a person in defendant's position would have understood that the club was "not open to the public." The trial court therefore did not err in denying defendant's motion for a judgment of acquittal.

We now turn to defendant's second assignment of error. Defendant argues that the trial court plainly erred when it instructed the jury on the definition of to "enter or remain unlawfully." Again, that instruction provided:

> "To 'enter or remain unlawfully' is defined as to enter or remain in or on the premises when the premises at the time of such entry or remaining are not open to the public, *or* when the entrant is not otherwise licensed or privileged to do so."

(Emphasis added.) According to defendant, that instruction was an incorrect statement of the law because, as noted above, the Supreme Court has construed the elements in ORS 164.205(3)(a) in the conjunctive; that is, the state must prove *both* that the premises were not open to the public *and* that the entrant was not otherwise licensed or privileged to be there. *Davis*, 261 Or App at 42. Defendant concedes that he failed to preserve that issue below. He asks instead that we review the trial court's jury instruction as an error "apparent on the face of the record[.]"

We may exercise our discretion to review an unpreserved error if (1) it is an error of law; (2) "the legal point is obvious, not reasonably in dispute" and (3) the error appears "on the face of the record." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990). Even if those prerequisites are met, we exercise our discretion to review unpreserved error with "upmost caution" because doing so "is contrary to the strong policies requiring preservation and raising of error." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991). Consequently, should we decide to consider unpreserved error, we must articulate our reasons.[2] *Id.*

---

[2] The parties also present arguments as to whether ORCP 59 H precludes us from reviewing defendant's second assignment of error. After the parties briefed this case, however, the Supreme Court decided *State v. Vanornum*, 354 Or 614, 628, 317 P3d 889 (2013) (holding that ORCP 59 H "was not intended to govern preservation of instructional error for purposes of appellate court review or to

Assuming for the sake of discussion that the three prerequisites for plain error review are satisfied, we nonetheless decline to exercise our discretion to address the alleged error. The factors relevant to our decision include

"the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Ailes*, 312 Or at 382 n 6. Here, we find it especially significant that the trial court provided the jury with a definition of the phrase "to enter or remain unlawfully" that directly quoted the text of ORS 164.205(3)(a). We have noted before that "[a]s a general rule it is not erroneous for the court to instruct the jury by defining the crime in the language of the statute if the jury is not confused or misled thereby." *State v. Keffer*, 3 Or App 57, 60, 471 P2d 438 (1970) (citing *State v. Livingston*, 2 Or App 587, 469 P2d 632 (1970)); *see also State v. Schindler*, 20 Or App 400, 409, 531 P2d 915 (1975).

Despite that general rule, there was a good argument to be made that the trial court's instruction was incorrect and potentially confusing in light of our decision in *Collins*, 179 Or App at 393, which held that the "or" in ORS 164.205(3)(a) is conjunctive. However, defendant did not make that argument to the trial court. One of the policies behind the preservation requirement is to ensure that "trial courts have an opportunity to understand and correct their own possible errors." *Vanornum*, 354 Or at 632. That policy is especially significant where a trial court instructs a jury by directly quoting the precise words of the relevant statute. In such cases, it is particularly important for counsel to call the trial court's attention to why a statutory definition may be problematic. We conclude, therefore, that the "policies behind the general rule requiring preservation" counsel against our exercising discretion to review defendant's

preclude appellate courts from reaching plain errors"). *Vanornum* resolves the ORCP 59 H issue in defendant's favor.

second assignment of error. *Ailes*, 312 Or at 382 n 6. We also conclude that a consideration of other relevant factors does not compel a different conclusion. Because we reject defendant's first assignment of error and decline to address his second, we affirm.

Affirmed.